# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 16, 2010

No. 08-60769

Lyle W. Cayce
Clerk

RAUL ENRIQUEZ-GUTIERREZ

Petitioner

v.

ERIC H. HOLDER, JR., U.S. ATTORNEY GENERAL

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals

Before JONES, Chief Judge, and BENAVIDES and PRADO, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:

Raul Enriquez-Gutierrez petitions for review of a decision of the Board of Immigration Appeals ("BIA" or "Board") ordering him removed from this country. The BIA found that Enriquez is removable on the basis of a 2001 conviction for cocaine possession, but Enriquez protests that in an earlier deportation proceeding, he received a waiver of deportation covering that conviction under former § 212(c) of the Immigration and Nationality Act ("INA"). The BIA concluded, however, that Enriquez had stipulated that his 2001 cocaine conviction would be excluded from coverage under that waiver. At oral argument before this Court, the government conceded that Enriquez had not stipulated that his 2001 cocaine conviction would be excluded from the waiver.

No. 08-60769

We find that the transcript of Enriquez's deportation hearing reveals that the BIA's conclusion regarding the stipulation is incorrect. We also conclude that the BIA's opinion does not otherwise state a valid rationale for removing Enriquez from this country. Consequently, we vacate the decision of the BIA and remand this case for further proceedings.

I.

Enriquez is a citizen of Mexico, but became a lawful permanent resident of this country in 1976. In 1980, he was convicted of an offense relating to alien smuggling, and subsequently was convicted in 1990 for felony delivery of marijuana. After his marijuana conviction, the Immigration and Naturalization Service ("INS") commenced deportation proceedings against Enriquez in 1991. Enriquez conceded that his marijuana conviction rendered him eligible for deportation, but he sought a waiver of deportation under former § 212(c) of the INA. Under former § 212(c), the Attorney General had discretion to allow aliens subject to deportation to remain in this country, so long as they had maintained "a lawful unrelinquished domicile of seven consecutive years" in the United States, had not been convicted of "one or more aggravated felonies," and had not "served for such felony or felonies a term of imprisonment of at least 5 years." *See* 8 U.S.C. § 1182(c) (1994).[1]

The immigration judge ("IJ") refused to grant Enriquez a waiver in May 1991, and the BIA dismissed Enriquez's appeal of the IJ's decision in July 1994.

---

[1] The text of former § 212(c) did not explicitly allow waiver of deportation. Instead, it authorized the Attorney General to waive grounds of inadmissibility for "[a]liens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily . . . and who [were] returning to a lawful unrelinquished domicile of seven consecutive years." 8 U.S.C. § 1182(c) (1994). However, in *Francis v. INS*, the Second Circuit held that it would violate the equal protection clause to provide § 212(c) relief to excludable aliens seeking readmission if such relief were not also available to deportable aliens resident in this country. 532 F.2d 268, 273 (2d Cir. 1976). Soon after, the BIA adopted this view in *Matter of Silva*, and § 212(c) waivers became available in deportation proceedings throughout the country. 16 I. & N. Dec. 26, 29-30 (BIA 1976).

2

Several months after this dismissal, Enriquez filed a motion seeking reconsideration and reopening of his case, but the motion remained pending before the BIA for more than seven years. Finally, in February 2002, the BIA declined to reconsider its 1994 decision, but agreed to reopen Enriquez's deportation proceedings. The BIA remanded Enriquez's case to an IJ, to allow Enriquez an opportunity to demonstrate that he now merited § 212(c) relief given the decade that had passed since his deportation proceedings began.

In the interim, however, several important developments had occurred. Enriquez had been convicted of two additional crimes in 2001, possession of a firearm in violation of state law and possession of less than a gram of cocaine. Additionally, in 1996, Congress had considerably rewritten the nation's immigration laws, restricting grants of § 212(c) relief and then repealing the provision altogether. First, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") placed new restrictions on the eligibility of certain aliens for waivers of deportation under § 212(c). Pub. L. No. 104-132, § 440(d), 110 Stat. 1214, 1277. Second, shortly after the passage of AEDPA, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009-546. IIRIRA repealed § 212(c) and replaced it with INA § 240A, a more restrictive provision that only allows the Attorney General to "cancel" the removal of aliens if they have not been convicted of an aggravated felony. *See* 8 U.S.C. § 1182(c) (2006) (former INA § 212(c)); § 1229b (new INA § 240A); IIRIRA § 304(a)-(b), 110 Stat. at 3009-594-97. Although Congress repealed § 212(c) in 1996, it has continued to be applied in certain deportation and removal proceedings. Notably, in *INS v. St. Cyr*, the Supreme Court ruled that IIRIRA's repeal of § 212(c) could not be applied retroactively to aliens who had pleaded guilty before the passage of IIRIRA and whose guilty pleas to deportable offenses may have been entered with the expectation that they would be eligible for discretionary waiver of deportation.

3

No. 08-60769

533 U.S. 289, 326 (2001).

On remand before a new IJ, the government chose not to bring new deportation charges against Enriquez for his 2001 convictions, but Enriquez filed an updated application requesting § 212(c) relief. Since 8 C.F.R. § 1212.3(d) provides that the approval of an application for § 212(c) relief only covers "those specific grounds of excludability, deportability, or removability that [are] described in [an alien's] application," Enriquez disclosed that he might be deportable due to "convictions for controlled substance offenses, 1990 & 1999." His disclosure of a 1999 controlled substance offense was actually a reference to his 2001 conviction for cocaine possession, for which he had been arrested in 1999. However, whatever ambiguity was created by Enriquez's reference to a "1999" conviction was cured by his attachment to his application of a record of his cocaine conviction, showing that the underlying offense occurred in 1999 but that he was convicted in 2001. Notably, Enriquez did not seek a waiver for his 2001 firearm conviction, as such relief had historically been unavailable under the former § 212(c). *See Chow v. INS*, 12 F.3d 34, 38 (5th Cir. 1993).

What next occurred at Enriquez's deportation hearing in April 2004 is the primary subject of this appeal. At the hearing, the government announced that it was willing to stipulate to a grant of § 212(c) relief for Enriquez's 1980 alien smuggling conviction and his 1990 marijuana conviction. Enriquez's counsel and the IJ agreed to a stipulation of relief for these offenses, but at the close of the hearing, the following exchange occurred between Enriquez's counsel and the IJ:

JUDGE FOR THE RECORD
    Submitted. 04/29, today. There's no other issue or fact of law and the parties have stipulated to the grant of the 212(c) relief for the offenses that occurred 1990 and before, then nothing else to resolve. That doesn't resolve, of course, any future issues concerning the 2001 [conviction].
MS. BRODYAGA TO JUDGE
    Well, we will, we would agree that it does, by law, Judge. The

4

No. 08-60769

Government is . . . not stipulating to that, but we are also not
stipulating that it doesn't—we will argue . . . that by law it does.
JUDGE TO MS. BRODYAGA
        Sure.
MS. BRODYAGA TO JUDGE
        But we have no problem with their position and are happy to
accept the grant.

The IJ then proceeded to grant Enriquez's application for a § 212(c) waiver and
stated in an oral decision that "the Court finds that the parties have stipulated
to the grant of the 212(c) relief on the issues that were remanded by the Board
for consideration, and that is the [1990] conviction and any other crime that
occurred prior to 1990 that brought the respondent into deportation
proceedings." Thus, although the IJ orally limited his grant of § 212(c) relief to
Enriquez's 1980 and 1990 convictions, Enriquez's counsel clearly reserved the
right to argue that the waiver also by law covered his disclosed 2001 cocaine
conviction.

Soon after, in October 2004, the government served a new notice to appear
on Enriquez, alleging that he was eligible for removal from the United States on
the basis of his 2001 cocaine and firearm convictions. The government asserted
removal on the basis of three statutory provisions. It claimed that Enriquez was
removable because he had been convicted of breaking a law "relating to a
controlled substance," *see* 8 U.S.C. § 1227(a)(2)(B)(i), and had been convicted of
"possessing, or carrying . . . a firearm . . . in violation of . . . law." *See*
§ 1227(a)(2)(C). It also claimed that Enriquez had been convicted of an
"aggravated felony," *see* § 1227(a)(2)(A)(iii), as defined at 8 U.S.C.
§ 1101(a)(43)(B) to include "a drug trafficking crime," which in turn is defined
at 18 U.S.C. § 924(c)(2) to include "any felony punishable under the Controlled
Substances Act (21 U.S.C. § 801 et seq.)." As described above, the significance
of the aggravated felony charge is that permanent resident aliens like Enriquez

5

No. 08-60769

are statutorily ineligible for discretionary cancellation of removal under § 240A if they have been convicted of an aggravated felony. *See* 8 U.S.C. § 1229b(a)(3).

The government's new removal charges against Enriquez were eventually heard before the same IJ who had initially granted § 212(c) relief in Enriquez's earlier deportation proceedings. As expected, Enriquez argued that his § 212(c) waiver blocked removal on the basis of his 2001 cocaine conviction. He also argued that although he could be removed due to his firearms conviction, he was eligible for adjustment of status, which would allow him to remain in the United States.[2] In November 2005, the IJ rejected these arguments and ordered Enriquez removed to Mexico. The IJ found that, as a matter of law, his previous grant of § 212(c) relief could not have covered Enriquez's 2001 cocaine conviction, since § 212(c) had already been repealed for five years by 2001. The IJ explained that although the Supreme Court had ruled in *INS v. St. Cyr* that § 212(c) relief was available to aliens who had pleaded guilty to crimes before the passage of AEDPA and IIRIRA, Enriquez's convictions postdated both, rendering *St. Cyr* inapplicable to his case. 533 U.S. at 326. He also found that Enriquez's 2001 cocaine conviction was an aggravated felony, making him ineligible for adjustment of status for his firearms offense.

On appeal, the BIA affirmed the IJ's decision, but under a somewhat

---

[2] As noted above, historically, § 212(c) waivers were unavailable for aliens eligible for deportation due to firearms convictions. However, such aliens were eligible for adjustment of status, another form of relief that allowed them to remain in this country, despite any firearms conviction. Under 8 U.S.C. § 1255(a), "[t]he status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General . . . to that of an alien lawfully admitted for permanent residence if," among other requirements, the alien is "admissible to the United States for permanent residence." In 1992, prior to the passage of AEDPA and IIRIRA, the BIA held that even if a firearms offense renders an alien deportable, it does not make him or her *inadmissible* to this country, with the result that if an alien is "granted adjustment of status to lawful permanent resident, the [alien] will no longer be deportable on the basis of [the firearms] conviction." *In re Rainford*, 20 I. & N. Dec. 598, 602 (BIA 1992). Given our remand to the BIA in this case, we express no opinion on whether this relief would be available to cure Enriquez's removability for his firearms conviction, if he could not be removed for his cocaine conviction.

6

different rationale. The BIA seemingly agreed with the IJ's conclusion that Enriquez's 2001 cocaine conviction had been ineligible for a § 212(c) waiver because it postdated the passage of AEDPA and IIRIRA.[3] However, the BIA also expanded on the IJ's analysis. The Board reviewed the transcript of Enriquez's April 2004 deportation hearing, which had apparently not been made part of the record in Enriquez's removal proceedings before the IJ. Based on its review of the transcript, the Board surprisingly found that Enriquez had stipulated to limit the grant of § 212(c) relief in that proceeding to his 1980 and 1990 convictions, excluding his 2001 cocaine conviction. The BIA explained that under 8 C.F.R. § 1212.3(d), a § 212(c) waiver only covers the specific grounds of deportability that were disclosed in the alien's application, and that therefore it was permissible for parties like Enriquez to stipulate to limited grants of relief. The BIA also found that res judicata could not bar the government's attempt to remove Enriquez on the basis of his 2001 cocaine conviction, since res judicata was inapplicable to claims "which were stipulated to as *not* being covered in prior immigration proceedings" and since the government had been under no obligation to bring all available charges against Enriquez in that proceeding. Thus, the BIA found that Enriquez's § 212(c) waiver did not cover his 2001 cocaine conviction, and that he therefore could be removed for that conviction.

Having established Enriquez's removability, the Board next found that his 2001 cocaine conviction was an aggravated felony,[4] making Enriquez ineligible

---

[3] From the wording of the BIA's decision, it is unclear whether the BIA ruled that § 212(c) relief is categorically unavailable for post-IIRIRA convictions, or whether it ruled that such relief is simply unavailable in removal proceedings commenced after IIRIRA's passage. Although the best reading of the decision is the latter reading, for the purposes of this opinion, we assume that the BIA adopted the broader holding so that on remand there is no confusion on this issue.

[4] We note that under the Supreme Court's recent decision in *Carachuri-Rosendo v. Holder*, this conclusion is likely incorrect. No. 09-60 (U.S. June 14, 2010). The BIA found that Enriquez's 2001 conviction under Texas law for cocaine possession qualified as an aggravated felony because it was his second drug possession offense, and therefore Enriquez "could have

No. 08-60769

for discretionary cancellation of removal under § 240A. The Board also noted that Enriquez was ineligible for § 240A relief because he had already been granted § 212(c) relief once before. *See* 8 U.S.C. § 1229b(c)(6). Consequently, it affirmed the IJ's order removing Enriquez to Mexico. The BIA did not discuss Enriquez's eligibility for adjustment of status for his 2001 firearms conviction, presumably because the BIA's determination that Enriquez could be removed for his 2001 cocaine conviction rendered this issue irrelevant. Enriquez now petitions for review of the BIA's order affirming his removal from the United States.

## II.

Our jurisdiction in this case is governed by 8 U.S.C. § 1252. This provision generally prohibits judicial review of "any final order of removal against an alien who is removable by reason of having committed" certain criminal offenses, including controlled substance and firearms offenses like those for which Enriquez has been convicted. *See* 8 U.S.C. §§ 1252(a)(2)(C); 1227(a)(2)(B)(i) (controlled substances offenses); 1227(a)(2)(C) (firearms offenses). However, the REAL ID Act of 2005, Pub. L. No. 109-13, § 106(a), 119 Stat. 231, 310, amended § 1252 to grant judicial review over "constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in

---

been prosecuted" for felony recidivism under federal law. To reach this conclusion, the BIA relied on its prior decision in *In re Carachurri-Rosendo*, 24 I. & N. Dec. 382, 387-88 (BIA 2007), which we affirmed, *see* 570 F.3d 263, 264 (5th Cir. 2009), but which has now been overturned by the Supreme Court. In *Carachuri-Rosendo*, the Supreme Court held that "second or subsequent simple possession offenses are not aggravated felonies . . . when . . . the state conviction is not based on the fact of a prior conviction." No. 09-60, slip op. at 2. Based on the records of Enriquez's 2001 cocaine conviction, it appears that he was not charged for recidivism on the basis of his earlier 1990 marijuana conviction. Nevertheless, since we remand this case to the BIA, we leave this issue to be resolved definitively on remand. Ultimately, this issue may not be dispositive in this case, as Enriquez is already ineligible for cancellation of removal under § 240A because he previously received relief under former § 212(c) of the INA. That said, the Supreme Court's decision calls into question the IJ's determination that Enriquez is ineligible for adjustment of status on the basis of his 2001 cocaine conviction.

accordance with this section."  8 U.S.C. § 1252(a)(2)(D).  Consequently, to the extent that Enriquez's petition raises legal or constitutional issues, we have jurisdiction to address them.  Unless otherwise noted below, we review such legal and constitutional issues de novo.  *See Larin-Ulloa v. Gonzales*, 462 F.3d 456, 461 (5th Cir. 2006).

In appeals such as this, we generally only have authority to review the BIA's decision, although we may also review the IJ's decision when it has some impact on the BIA's decision, as when the BIA has adopted all or part of the IJ's reasoning.  *See Zhu v. Gonzales*, 493 F.3d 588, 593 (5th Cir. 2007).  In this case, although the BIA agreed with the IJ's analysis in certain respects, the BIA's decision does not rely on the IJ's decision, and thus our review is confined to the BIA's analysis and reasoning.  Additionally, since the BIA is a division of the Executive Office for Immigration Review ("EOIR"), and a "'judicial judgment cannot be made to do service for an administrative judgment,'" *see INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002) (per curiam) (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943)), we may usually only affirm the BIA on the basis of its stated rationale for ordering an alien removed from the United States.  *See Kwon v. INS*, 646 F.2d 909, 916  (5th Cir. 1981) (in reviewing BIA decision, explaining that "we are not permitted to consider reasons [for the BIA's decision] other than those it advanced").  However, in certain circumstances, there may be limited exceptions to this rule.  Even if there is a reversible error in the BIA's analysis, affirmance may be warranted "where there is no realistic possibility that, absent the errors, the . . . BIA would have reached a different conclusion." *Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 401 (2d Cir. 2005).

Enriquez raises a number of challenges to the BIA's removal order.  First, he asserts that his 2001 cocaine conviction was eligible for a § 212(c) waiver in his 2004 deportation proceedings, despite the fact that his conviction occurred after the passage of AEDPA and IIRIRA.  Second, he argues that the BIA went

beyond its authority in reviewing the transcript of his April 2004 deportation hearing, which was apparently not made part of the record before the IJ in his later removal proceedings. Third, he contends that the BIA erred in determining that he stipulated that the § 212(c) waiver granted in his 2004 deportation proceedings would not cover his 2001 cocaine conviction. Fourth, he asserts that as a matter of law, his 2001 cocaine conviction was included within the IJ's 2004 waiver because he disclosed the conviction in his application for § 212(c) relief, pursuant to 8 C.F.R. § 1212.3(d). We now address these issues in turn.

## A.

Although Enriquez's 2001 cocaine conviction occurred after the passage of IIRIRA, we conclude that this did not render the conviction ineligible for waiver under § 212(c) in his 2004 deportation proceedings. As noted above, the BIA's decision could be read as holding that the 2001 cocaine conviction could not have been waived under § 212(c) in Enriquez's deportation proceedings, as his conviction postdated the passage of AEDPA and IIRIRA. The BIA noted that Enriquez was ineligible for relief under *St. Cyr*, as he had pleaded guilty in 2001 for his cocaine offense long after AEDPA became effective. The BIA also supported its conclusion by pointing to 8 C.F.R. § 1212.3(h)(3), which provides that "[s]ection 212(c) relief is not available with respect to convictions arising from plea agreements made on or after April 1, 1997." Relying on similar arguments, the government once asserted during this appeal that Enriquez's § 212(c) waiver could not have covered his 2001 cocaine conviction. However, the government subsequently abandoned this argument in a Rule 28(j) letter notifying us of the Second Circuit's recent opinion in *Garcia-Padron v. Holder*, 558 F.3d 196 (2d Cir. 2009).

In *Garcia-Padron*, as in this case, the Second Circuit had to determine whether an alien who had been in deportation proceedings prior to the passage of AEDPA and IIRIRA could receive a § 212(c) waiver of deportation for a

conviction that occurred after the passage of AEDPA and IIRIRA. *Id*. at 199. The Second Circuit concluded that such convictions are eligible for § 212(c) relief. In reaching this conclusion, the *Garcia-Padron* court relied on two provisions that clarify that AEDPA and IIRIRA's limitations on § 212(c) relief do not generally apply to deportation proceedings commenced before their effective dates. *See id*. at 200-201 & n.5. Section 309(c)(1)(A) of IIRIRA establishes that, subject to certain exceptions not applicable here, "in the case of an alien who is in exclusion or deportation proceedings as of the . . . effective date [of the Act], . . . the amendments made by this subtitle shall not apply." 110 Stat. at 3009-625. Similarly, 8 C.F.R. § 1212.3(g) provides that AEDPA's limitations on § 212(c) relief are inapplicable to "any applicant for relief . . . whose deportation proceedings were commenced before the Immigration Court before April 24, 1996." Therefore, the Second Circuit found that AEDPA and IIRIRA do not restrict the availability of § 212(c) relief for an alien in deportation proceedings that began before the effective date of both statutes.

The Second Circuit also explained that 8 C.F.R. § 1212.3(h)(3) is not in conflict with this conclusion. The court found that § 1212.3(h)(3) merely codifies the holding in *St. Cyr*, where the Supreme Court held that the repeal of § 212(c) could not be applied retroactively to aliens placed into removal proceedings *after* passage of IIRIRA, but who had pleaded guilty before the passage of IIRIRA. *See* 558 F.3d at 202 (citing *St. Cyr*, 533 U.S. at 293). The Second Circuit reasoned that in *Garcia-Padron*, the alien's situation was "the reverse of that present in *St. Cyr*: his deportation proceeding began under the pre-AEDPA/IIRIRA regime, and his subsequent conviction occurred under the post-AEDPA/IIRIRA regime." *Id*. Consequently, the court held that because "§ 1212.3(h) was promulgated to deal with a retroactivity problem not present in [*Garcia-Padron*], the regulation cannot supersede the plain language of IIRIRA section 309(c)(1), which preserves section 212(c) relief for [aliens] whose

deportation proceedings began under the pre-IIRIRA regime." *Id.*

This analysis is supported by the commentary published in the Federal Register that accompanied the promulgation of § 1212.3(h)(3) and discussed the regulation's interaction with § 1212.3(g), the provision that makes AEDPA's limitations on § 212(c) relief inapplicable to deportation proceedings commenced before AEDPA's effective date. In this commentary, the EOIR explained that:

> One commenter expressed concern that [8 C.F.R. § 1212(3)(h)] would delete a previous rule issued by the Department that created a procedure for eligible aliens to apply for section 212(c) relief. The previous rule, sometimes referred to as the "Soriano rule," . . . is presently codified at 8 CFR 1212.3(g) [and provides] that the limitations of section 440(d) of AEDPA are not applicable to section 212(c) applicants whose deportation proceedings commenced prior to April 24, 1996, the effective date of AEDPA. . . . In [8 C.F.R. § 1212(3)(h)], the Department is implementing the Supreme Court's ruling in *St. Cyr* by providing eligibility and procedural requirements for section 212(c) relief for aliens whose convictions were entered after a plea agreement. . . . The commenter is correct in observing that the issue addressed in current § 1212.3(g) continues to be relevant to aliens whose deportation proceedings were commenced prior to the enactment of AEDPA. The Department will therefore leave intact the existing provision of 8 CFR 1212.3(g), which will continue to govern cases falling within its parameters.

Section 212(c) Relief for Aliens with Certain Criminal Convictions Before April 1, 1997, 69 Fed. Reg. 57,826, 57,832 (Sept. 28, 2004). As this commentary demonstrates, § 1212.3(h)(3) does not displace § 1212.3(g),[5] much less § 309(c)(1)

---

[5] The EOIR promulgated § 1212.3(g) in 2001, for the purpose of establishing a nationally uniform rule governing the applicability of AEDPA, after a number of courts had held that Congress did not intend for AEDPA to apply retroactively to proceedings commenced before its effective date. *See* Section 212(c) Relief for Certain Aliens in Deportation Proceedings Before April 24, 1996, 66 Fed. Reg. 6,436, 6,438 (Jan. 22, 2001) ("In the interest of the uniform and expeditious administration of the immigration laws, the Attorney General acquiesces on a nationwide basis in those appellate decisions holding that AEDPA section 440(d) is not to be applied in the cases of aliens whose deportation proceedings were commenced before AEDPA was enacted.").

No. 08-60769

of IIRIRA. Therefore, we agree with the holding of the Second Circuit in *Garcia-Padron*,[6] and find that the fact that Enriquez's 2001 cocaine conviction occurred after the passage of AEDPA and IIRIRA does not mean it could not have been waived in his deportation proceedings.[7]

B.

Enriquez also argues that the BIA impermissibly considered the transcripts of his 2004 deportation hearing and the oral decision of the IJ that resulted from that proceeding, which he alleges were not properly made part of the record in his later removal proceedings. He argues that when the BIA assessed the scope of his § 212(c) waiver, it should have only considered documents made part of the record before the IJ. These documents included his application for § 212(c) relief, which disclosed his 1999 cocaine offense, and the written order of the IJ, which showed that his application was "granted," without further explanation. We find Enriquez's arguments unpersuasive and conclude that the BIA did not err in consulting the transcripts, as it had authority to take administrative notice of them. We review an agency's decision to take administrative notice for abuse of discretion. *See Rivera-Cruz v. INS*, 948 F.2d 962, 966 (5th Cir. 1991).

The BIA is prohibited from engaging "in factfinding in the course of deciding appeals." 8 C.F.R. § 1003.1(d)(3)(iv); *see also* Procedural Reforms To Improve Case Management, 67 Fed. Reg. 54,878, 54,892 (Aug. 26, 2002)

---

[6] In *Requena-Rodriguez v. Pasquarell*, we applied AEDPA's limits on § 212(c) relief against an alien who had been in deportation proceedings before AEDPA's passage. 190 F.3d 299, 301-02 (5th Cir. 1999). However, in that case, the alien had not argued that AEDPA "should not apply to deportation proceedings that were pending on the date it became effective." *Id*. at 306 n.26. Enriquez has now presented this argument.

[7] We also note that Enriquez is presently in removal proceedings, commenced long after AEDPA and IIRIRA became effective. Thus, we have no quarrel with the BIA's conclusion that Enriquez is ineligible for further relief under former § 212(c) in the removal proceedings from which this appeal has been taken.

(characterizing § 1003.1(d)(3)(iv) as codifying "Board precedent holding that new facts will not be considered on appeal"). Accordingly, the record in removal proceedings before the BIA is limited to the "hearing before the immigration judge, including the testimony, exhibits, applications, proffers, and requests, the immigration judge's decision, and all written orders, motions, appeals, briefs, and other papers filed in the proceedings." 8 C.F.R. § 1240.9. In this case, although the jumbled state of the record makes it difficult to be sure, it appears that the transcripts of the IJ's 2004 oral decision and the 2004 deportation hearing were not made part of the record before the IJ in Enriquez's removal proceedings.[8] The transcript of the 2004 oral decision is located in the portion of the administrative record that includes materials presented to the IJ in Enriquez's 2005 removal proceedings, but it could not have been made part of the record before the IJ in 2005, as it was not transcribed until October 2006. It appears that the transcripts first entered the record on appeal before the BIA, when hearing transcripts from Enriquez's terminated deportation proceedings were mistakenly included in the record instead of hearing transcripts from his later removal proceedings. As such, the transcripts do not seem to be part of the formal record in this case, as that term is defined in 8 C.F.R. § 1240.9.[9]

Nevertheless, even assuming that the transcripts were not properly made part of the record, the BIA was entitled to take administrative notice of them. Although the BIA may not engage in factfinding, it may take "administrative notice of commonly known facts such as current events or the contents of official

---

[8] This gap in the record before the IJ is hardly surprising, as Enriquez's 2005 removal proceedings were held before the same IJ that had previously granted his application for § 212(c) relief in 2004.

[9] The government argues that because it cited to the transcript in its briefing before the BIA, the transcript became part of the record before the BIA within the meaning of 8 C.F.R. § 1240.9. This argument is meritless, as it would allow parties to introduce new evidence never considered by the IJ into proceedings before the BIA.

documents" pursuant to 8 C.F.R. § 1003.1(d)(3)(iv). We find that the transcripts at issue in this case qualify as "official documents" under § 1003.1(d)(3)(iv). Usually, when the BIA takes notice of "official documents," it takes notice of State Department reports discussing current events in foreign countries. *See* 67 Fed. Reg. at 54,892 (explaining that § 1003.1(d)(3)(iv) "make[s] clear that the Board may take administrative notice . . . of the contents of official documents such as the country condition reports prepared by the Department of State"). However, the text of § 1003.1(d)(3)(iv) does not limit the BIA to noticing only country condition reports, and we have previously held in the immigration context that courts "allow agencies 'wide latitude in taking official notice.'" *See Rivera-Cruz*, 948 F.2d at 966 (quoting *Kaczmarczyk v. INS*, 933 F.2d 588, 596 (7th Cir.1991)). Consistent with this principle, we note that the Second Circuit has held that a state court decision disbarring an alien's counsel was an "official document" under § 1003.1(d)(3)(iv) that the BIA had to consider in adjudicating an ineffective assistance of counsel claim. *See Yang v. Gonzales*, 478 F.3d 133, 142-43 (2d Cir. 2007).

Similarly, as the government has pointed out, in the context of judicial notice, we have previously held that "[a] court may take judicial notice of the record in prior related proceedings, and draw reasonable inferences therefrom." *In re Missionary Baptist Found. of Am., Inc.*, 712 F.2d 206, 211 (5th Cir. 1983). Additionally, we have held that district courts have "the right to take notice of [their] own files and records" in adjudicating cases between the same parties raising substantially similar issues as those addressed in previous cases. *Aloe Creme Labs., Inc. v. Francine Co.*, 425 F.2d 1295, 1296 (5th Cir. 1970) (per curiam). With these precedents in mind, we conclude that the BIA did not abuse its discretion by taking administrative notice of the transcripts of prior proceedings involving Enriquez, the authenticity of which has not been challenged. Enriquez protests that the BIA never stated that it was taking

administrative notice of the transcripts, but we see no error in the Board's failure to recite that it was taking notice of them. *Cf. Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 613 (5th Cir. 2000) ("Even if a trial judge fails to make a specific finding on a particular fact, the reviewing court may assume that the court impliedly made a finding consistent with its general holding so long as the implied finding is supported by the evidence."). Consequently, the transcripts were properly before the BIA and are also properly before us on this appeal.

C.

Since the transcripts are properly before us, we must now assess whether the BIA erred in concluding that Enriquez stipulated to exclude his 2001 cocaine conviction from the reach of the § 212(c) waiver granted in his deportation proceedings. We find that the BIA's conclusion is contradicted by the transcript of Enriquez's deportation proceeding, and that Enriquez expressly reserved the right to argue that his cocaine conviction fell under the § 212(c) waiver.

As an initial matter, we find that we have jurisdiction over Enriquez's claim regarding the scope of his stipulation. We have already explained that the REAL ID Act limits our jurisdiction in cases such as this to "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D). Consequently, we may not review any factual determinations made in Enriquez's immigration proceedings. In his briefing, Enriquez seems to assume that the BIA's determination regarding the scope of his stipulation qualifies as a question of fact. As such, he argues that the BIA's "factual" error is so severe that it establishes a due process violation, which we could remedy since we retain jurisdiction over criminal aliens' constitutional claims. *See United States ex rel. Vajtauer v. Commissioner of Immigration at Port of New York*, 273 U.S. 103, 106 (1927) (holding that "[d]eportation . . . on charges unsupported by any evidence is a denial of due process"). However, we need not address whether a factual error could ever

establish a due process violation reviewable under the REAL ID Act, as the scope of the stipulation reached in Enriquez's deportation proceedings is a question of law. The Supreme Court has held that the "[d]etermination of the meaning and effect of a stipulation . . . is not a factual finding;" instead, courts review stipulations in the same manner they "review a determination of meaning and effect of a contract, or consent decree, or proffer for summary judgment." *Braxton v. United States*, 500 U.S. 344, 350 (1991); *see also United States v. Hollis*, 506 F.3d 415, 419 (5th Cir. 2007) (explaining that meaning of stipulation is reviewed de novo). Since the reach of Enriquez's stipulation presents a question of law, there is no barrier to our jurisdiction necessitating Enriquez's recourse to a due process claim.

Our jurisdiction established, we find that the transcript of Enriquez's April 2004 deportation hearing unambiguously demonstrates that he did not stipulate to exclude his 2001 cocaine conviction from his § 212(c) waiver. At the hearing, the IJ stated that his grant of § 212(c) relief would not "resolve, of course, any future issues concerning the 2001" cocaine conviction. In response, Enriquez's counsel immediately protested, "Well, we will, we would agree that it does, by law, Judge. The Government is . . . not stipulating to that, but we are also not stipulating that it doesn't—we will argue . . . that by law it does." It is true that Enriquez then accepted the government's offer to stipulate to relief for his 1980 and 1990 convictions and stood by as relief was granted for those convictions by the IJ. But this in no way indicates that Enriquez was forfeiting his opportunity to argue that the § 212(c) waiver reached further than those convictions. The hearing transcript flatly contradicts the BIA's conclusion regarding the scope of Enriquez's stipulation; indeed, at oral argument, the government conceded that Enriquez did not stipulate to exclude his 2001 cocaine conviction from the IJ's grant of § 212(c) relief.

That said, if the BIA's decision provided valid grounds for removing

Enriquez irrespective of this error, we would be able to affirm the BIA. However, this is not possible, as the error fundamentally undermines the Board's rationale for affirming the IJ's order removing Enriquez. In its decision, the BIA's apparent reasoning was that the government could remove Enriquez on the basis of his 2001 cocaine conviction because (i) § 212(c) relief was unavailable for the cocaine conviction because it postdated IIRIRA, (ii) Enriquez stipulated that the § 212(c) waiver granted in his deportation proceedings would not cover his 2001 cocaine conviction, (iii) res judicata could not apply to block removal on the basis of a conviction that, by stipulation, was not covered in prior proceedings, and (iv) the government had been under no obligation to bring all available deportation charges against Enriquez in his deportation proceedings, also barring a claim of res judicata. We have already rejected the claim that Enriquez was categorically ineligible for § 212(c) relief for his 2001 conviction because it postdated IIRIRA. We have also now rejected the contention that Enriquez stipulated that his 2001 cocaine conviction was not covered by his waiver. After these two conclusions, the BIA's third point is now invalid. Also, the BIA's fourth point is irrelevant—even if the government had been under no obligation to bring all possible deportation charges against Enriquez in his deportation proceedings, if the § 212(c) waiver covered his 2001 cocaine conviction, he could not now be removed on the basis of that conviction. Due to the BIA's erroneous conclusion regarding the scope of Enriquez's stipulation, it never addressed his argument that, as a matter of law, the § 212(c) waiver *had* to include his disclosed 2001 cocaine conviction, notwithstanding the IJ's failure to include the cocaine conviction in his oral grant of relief. If Enriquez can prevail on this issue, he may avoid removal, at least for his 2001 cocaine conviction.

Of course, none of this resolves Enriquez's removability on the basis of his 2001 firearms offense, which he has conceded. Even if he cannot be removed for

his 2001 cocaine conviction because of the § 212(c) waiver, he could still be removed for his firearms offense. The BIA correctly noted that under 8 U.S.C. § 1229b(c)(6), Enriquez is ineligible for cancellation of removal under INA § 240A because he is a prior recipient of relief under former INA § 212(c). However, the BIA failed to discuss Enriquez's claim that he is eligible for adjustment of status for his firearms offense. Although it is unclear if Enriquez remains eligible for adjustment of status, since the BIA has not addressed this issue, we are reluctant to address it at this stage, given our obligation to restrict our review to the BIA's stated rationale for its decision. *Kwon*, 646 F.2d at 916.[10] Enriquez could yet avoid removal, if he can show that his § 212(c) waiver had to cover his disclosed 2001 cocaine conviction.

### D.

Enriquez asks us to rule that, as a matter of law, the IJ's grant of § 212(c) relief necessarily had to include Enriquez's 2001 cocaine conviction, which was disclosed in his application for relief. Enriquez largely bases this argument on 8 C.F.R. § 1212.3(d), which provides that "the approval [of a § 212(c) waiver] covers only those specific grounds of excludability, deportability, or removability that were described in the [alien's] application."

The BIA never ruled on this issue because it incorrectly concluded that Enriquez had stipulated that his 2001 cocaine conviction would not be covered by the § 212(c) waiver. The Supreme Court has cautioned us that when the BIA has not yet considered an issue, "a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." *Orlando Ventura*, 537 U.S. at 16. Since "we will defer to the BIA's interpretation

---

[10] Although we only review the BIA's decision, and not that of the IJ, we note that the IJ ruled that Enriquez was ineligible for adjustment of status because it found that his 2001 cocaine conviction qualified as an aggravated felony. As explained earlier in footnote 4, the Supreme Court's recent decision in *Carachuri-Rosendo* has undermined that conclusion. No. 09-60.

No. 08-60769

of immigration regulations if the interpretation is reasonable," *see Lopez-Gomez v. Ashcroft*, 263 F.3d 442, 444 (5th Cir. 2001), and the BIA has not yet spoken on this question, we find that it would be inappropriate to rule on this issue at this time. If necessary for the resolution of this case, the BIA or an IJ can address this issue on remand.[11]

III.

Thus, we hold that the BIA erroneously overstated the scope of the stipulation reached in Enriquez's deportation proceedings. We also conclude that this error fatally undermines the BIA's stated rationale for removing Enriquez from the United States. However, we remand this case to the BIA, as we express no opinion on whether Enriquez could yet still be removed under a different rationale.

Consequently, Enriquez's petition for review is GRANTED, the decision of the BIA is VACATED, and this case is REMANDED for further proceedings consistent with this opinion.

---

[11] The government argues that if Enriquez was dissatisfied with the IJ's decision to limit the grant of § 212(c) relief to the 1980 and 1990 convictions, he should have appealed that decision and may not argue now in these proceedings that the grant covered his 2001 cocaine conviction. Since the BIA found that Enriquez had stipulated to limit the scope of the § 212(c) waiver, it did not address this argument in its decision, and thus we also leave this issue to be addressed on remand.