# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-60292

United States Court of Appeals
Fifth Circuit

**FILED**
September 1, 2017

Lyle W. Cayce
Clerk

JUAN MANUEL LOPEZ RUEDA DE LEON,

Petitioner

v.

JEFFERSON B. SESSIONS, III, U. S. ATTORNEY GENERAL,

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A202 132 711

Before REAVLEY, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:*

Juan Manuel Lopez Rueda De Leon ("Lopez") appeals the Board of Immigration Appeals ("BIA") order denying him relief. For the reasons set forth below, we DENY his appeal.

## I.    Factual Background and BIA Decision

Lopez is a citizen of Mexico. He was detained upon entering the United States with his wife and two daughters, but his place of detention was many

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

miles from that of the rest of his family.  Lopez told border officials that he feared persecution in Mexico by the Mexican Marines (the "Marines") (part of the Mexican Navy) because they made his stepson disappear and because of his family's subsequent protestations to the Mexican government.  The Department of Homeland Security issued Lopez a notice to appear and charged him as subject to removal.

Lopez's merits hearing took place on February 4, 2015.  Lopez testified that in June 2014, his stepson, a United States citizen and Texas resident, was visiting the family in Mexico when he was arrested and was made to "disappear" by the Marines.  Mexican authorities have never provided an explanation for his son's disappearance.  Lopez testified that he and his wife reported their son's disappearance to American and Mexican authorities and protested his disappearance publicly.  He and his wife also filed a "denunciation for human rights."

The same day that Lopez's wife met with Mexican officials regarding the son's disappearance, Lopez testified that his neighbor Pilar called his family and notified them that the Marines destroyed their house by taking all the furniture and possessions.  Lopez and his family were away from their house when this incident occurred and did not return.  He said he and his wife notified Mexican and American authorities about this incident.  Lopez and his wife and two daughters entered the United States several days later.

The Immigration Judge ("IJ") stated that he was satisfied that Lopez's son was kidnapped and missing and that Lopez and his wife tried to find out what happened.  But the IJ asked Lopez whether it was possible that the Marines were executing a search warrant of his house because his son was involved in criminal activity.  Lopez responded that he did not know and had not been presented with a warrant; he had considered the possibility that his son was involved in criminal activity when his son first disappeared but

No. 16-60292

rejected it because Mexican authorities never explained what happened to his son. Lopez conceded, however, that it was common practice for the Marines to cordon off the street when executing a search warrant and that his neighbors had reported that the street at his house was cordoned off. Lopez indicated that he was unable to provide additional corroborating evidence such as evidence from his neighbor because his wife had all the necessary contact information, and he was housed separately from her.

Despite his finding that Lopez testified credibly, the IJ denied Lopez's application for a variety of reasons. The IJ concluded that Lopez failed to corroborate his testimony. The IJ also found that even if Lopez's house was ransacked by the Marines, Lopez's belief that he would be harmed by the Marines was speculative because it was possible that the Marines executed a search warrant of his house in furtherance of a criminal investigation of his son. The IJ next found that Lopez failed to show that he was or will be persecuted by the Marines on account of a protected ground. Accordingly, the IJ concluded Lopez was not entitled to asylum or withholding of removal. The IJ also denied Lopez's claim under the Convention Against Torture ("CAT").

On appeal to the BIA, Lopez argued that his due process rights were violated, that he should be permitted to present new evidence, and that he was persecuted on account of his actual or imputed political opinion and his membership in the particular social group of his family. Finally, he argued that it was likely that he would be arrested and tortured if he returned to Mexico.

The BIA dismissed Lopez's appeal. It rejected Lopez's due process arguments, and it declined to remand the case to the IJ for consideration of new evidence. The BIA accepted the IJ's finding that Lopez was not persecuted on account of his membership in a particular social group, and rejected Lopez's claim of persecution on account of political opinion because Lopez's fear

3

stemmed only from a complaint he made against Mexican authorities regarding the disappearance of his son. Lastly, the BIA accepted the IJ's finding that Lopez will not be tortured if returned to Mexico.

Lopez filed a timely petition for review.

II.    Discussion

A.  Standard of Review

We generally have the authority to review only the BIA's decision, *Wang v. Holder*, 569 F.3d 531, 536 (5th Cir. 2009), and the BIA's legal conclusions are reviewed de novo, *Orellana-Monson v. Holder*, 685 F.3d 511, 517 (5th Cir. 2012). But, we may review the IJ's factual findings adopted by the BIA. *Wang*, 569 F.3d at 536. Findings of fact are reviewed "under the substantial evidence standard, which requires that the decision of the BIA be based on the evidence presented and that the decision be substantially reasonable." *Orellana-Monson*, 685 F.3d at 517–18. "Under the substantial evidence standard, reversal is improper unless the court decides 'not only that the evidence supports a contrary conclusion, but also that the evidence *compels* it.'" *Id.* at 518 (quoting *Chen v. Gonzales,* 470 F.3d 1131, 1134 (5th Cir. 2006)); *see also Kane v. Holder*, 581 F.3d 231, 236 (5th Cir. 2009) (noting that "we may not reverse merely because we would have decided the case differently" (citation omitted)). "The petitioner has the burden of showing that the evidence is so compelling that no reasonable factfinder could reach a contrary conclusion." *Orellana-Monson*, 685 F.3d at 518 (citation omitted). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Arif v. Mukasey*, 509 F.3d 677, 679 (5th Cir. 2007) (per curiam) (quoting *Consolo v. Fed. Mar. Comm'n,* 383 U.S. 607, 620 (1966)). But an IJ's determinations "still 'must be supported by specific and cogent reasons derived from the record.'" *Wang*, 569 F.3d at 537 (quoting *Zhang v. Gonzales,* 432 F.3d

339, 344 (5th Cir. 2005)).  This standard of review also applies to petitions for review of factual findings regarding the CAT.  *See Chen*, 470 F.3d at 1134.

B.  Asylum and Withholding of Removal

Lopez argues that the BIA erred in dismissing his appeal because the IJ erred in requiring corroborative evidence to show that his house was ransacked.  Our review of BIA decisions is only permitted if an applicant exhausts all of his administrative remedies.  8 U.S.C. § 1252(d)(1).  "An alien fails to exhaust his administrative remedies with respect to an issue when the issue is not raised in the first instance before the BIA . . . ."  *Roy v. Ashcroft*, 389 F.3d 132, 137 (5th Cir. 2004) (per curiam) (quoting *Wang v. Ashcroft*, 260 F.3d 448, 452–53 (5th Cir. 2001)).

In this case, although Lopez mentioned corroborative evidence to the BIA, he did so only in the context of arguing that he should be allowed to proffer new evidence.  He did not specifically challenge the IJ's conclusion that he should have provided corroborative evidence.  In order to sufficiently exhaust an argument, an applicant must make a "concrete statement before the BIA to which they could reasonably tie their claims before this court."  *See Omari v. Holder*, 562 F.3d 314, 321–23 (5th Cir. 2009) (explaining that § 1252(d) requires a petitioner to raise, present, or mention an issue to the BIA to satisfy exhaustion, but refusing to address the specific question of how extensively a petitioner must raise an issue to satisfy § 1252(d)); *see also Yang v. Holder*, 664 F.3d 580, 588 (5th Cir. 2011) (determining that a petitioner's argument to this court that the IJ abused its discretion by failing to grant a continuance was not exhausted by petitioner's statement to the BIA that he might have known to provide certain evidence if he had the benefit of lawyer).[1]  Lopez failed to do so.  Therefore, we lack jurisdiction to hear Lopez's corroboration arguments.

---

[1] *See also Amosie v. Holder*, 324 F. App'x 396, 398 (5th Cir. 2009) (per curiam).

No. 16-60292

*See Townsend v. I.N.S.*, 799 F.2d 179, 182 (5th Cir. 1986) (per curiam).  Given this conclusion, we have no basis to reconsider the IJ's determination whether Lopez's house was ransacked.  Without that evidence, he has no basis upon which to challenge the denial of asylum (or withholding of removal) as there is no realistic possibility that Lopez could show persecution or a well-founded fear of persecution on account of his political opinion or membership in a particular social group.[2]

### C.  Convention Against Torture

To obtain relief under the CAT, the applicant must show "first, is it more likely than not that [he] will be tortured upon return to his homeland; and second, is there sufficient state action involved in that torture."  *Tamara-Gomez v. Gonzales*, 447 F.3d 343, 350–51 (5th Cir. 2006) (footnote omitted).

The IJ denied Lopez's claim under the CAT because Lopez did not indicate that he was tortured in the past, there were no indications of mass human rights violations in Mexico, and because Lopez indicated nothing to suggest what may happen to him in Mexico.  The BIA accepted this finding.  In his petition to this court, Lopez argues that he could not relocate within Mexico because the Marines operate throughout the entire country, that newspaper articles regarding the disappearance of his stepson demonstrate a problem with disappearances in Mexico, and that the U.S. State Department's 2013 Mexico Human Rights Report shows pervasive human rights abuses

---

[2] We usually lack the authority to evaluate the question in the first instance.  *See Enriquez-Gutierrez v. Holder*, 612 F.3d 400, 407 (5th Cir. 2010) ("[W]e may usually only affirm the BIA on the basis of its stated rationale . . . .").  However, affirmance is appropriate "where there is no realistic possibility that, absent the errors, the . . . BIA would have reached a different conclusion."  *Id.* (omission in original) (quoting *Cao He Lin v. U.S. Dep't of Justice,* 428 F.3d 391, 401 (2d Cir. 2005)).  There is no way that Lopez will be able to show persecution or well-founded fear of future persecution if he cannot challenge the IJ's conclusion that he must present corroborated evidence that his house was ransacked.  His claim of persecution rests on the ransacking incident.

committed by the Mexican military.

The generalized evidence regarding human rights abuses, standing alone, does not compel the conclusion that it is more likely than not that Lopez would be tortured if returned to Mexico. *See Chen*, 470 F.3d at 1140 (holding that evidence that some but not all repatriated detainees were tortured did not entitle the petitioner to relief under the CAT because it did not establish with requisite certainty that the petitioner would be tortured). Nor does the evidence about his stepson's disappearance or even the ransacking of his house (if considered) compel such a conclusion. The fact that the Marines abducted Lopez's stepson, along with Lopez's testimony that he considered that his stepson had been involved in criminal activity and that the Marines may have been executing a search warrant on that basis, supports a conclusion that the Marines were after his son, not Lopez himself. Furthermore, Lopez presented no evidence that he was ever physically harmed. This evidence does not necessitate a conclusion by the BIA that Lopez will not, more likely than not, be tortured upon return to Mexico. Therefore, we cannot conclude that relief should be granted on this ground.

D. Other Arguments

We have considered Lopez's other arguments regarding due process and the BIA's refusal to remand to consider new evidence. We conclude that these arguments lack merit.

Petition DENIED.