# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 4, 2009

Charles R. Fulbruge III
Clerk

No. 07-60814

JOHN NYAKUNDI OMARI

Petitioner

v.

ERIC H HOLDER, JR, U S ATTORNEY GENERAL

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals

Before GARWOOD, DENNIS, and PRADO, Circuit Judges.

PRADO, Circuit Judge:

An Immigration Judge found Petitioner John Nyakundi Omari removable, but granted him a discretionary cancellation of removal. The Government appealed this decision to the Board of Immigration Appeals, which reversed the IJ and ordered Omari removed to Kenya. Omari now petitions this court to vacate the BIA's order on four separate grounds. But Omari has never properly presented any of the issues he now raises to the BIA, despite the opportunity to do so. As 8 U.S.C. § 1252(d) requires that a petitioner exhaust all administrative remedies available as of right for this court to have jurisdiction over an issue, Omari's failure to raise these issues before the BIA jurisdictionally bars us from addressing them.

Ordinarily, such a failure to raise an issue before the BIA would end our inquiry. But Omari makes two arguments that warrant consideration. First, he asserts that he effectively—if not explicitly—raised all pertinent issues before the BIA, such that the BIA had adequate notice to satisfy exhaustion. Second, Omari alternatively asks that we excuse his failure to exhaust. We find both arguments unavailing; allowance of "effective" exhaustion runs contrary to the purposes of § 1252(d), and, at least after the Supreme Court's decision in *Bowles v. Russell*, 127 S. Ct. 2360, 2364–66 (2007), we do not have the authority to excuse Omari's failure to comply with a statutory jurisdictional mandate.

We therefore dismiss Omari's petition for lack of jurisdiction. As our decision turns on a procedural stumble committed in his second appeal to the BIA, we set forth the history of Omari's case in some detail.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Omari came to the United States as a student in 1986 and soon became a lawful permanent resident. He later pleaded guilty to two unrelated criminal offenses: a Minnesota misdemeanor charge of fifth-degree assault (the "Minnesota assault conviction") and a federal charge of conspiracy to transport stolen goods in interstate commerce (the "federal conspiracy conviction"). The Government began removal proceedings against Omari and issued him a Notice to Appear, eventually asserting three separate grounds for removal: (1) his federal conspiracy conviction was an aggravated felony, *see* 8 U.S.C. § 1227(a)(2)(A)(iii); (2) his Minnesota assault conviction was a crime of domestic violence, *see* 8 U.S.C. § 1227(a)(2)(E)(i); and (3) both his Minnesota assault and federal conspiracy convictions were crimes involving moral turpitude, *see* 8 U.S.C. § 1227(a)(2)(A)(ii). Omari contested his removability and also applied for cancellation of removal. *See* 8 U.S.C. § 1229b(a). An IJ found Omari removable on the ground that his federal conspiracy conviction constituted an aggravated felony and did not address the other grounds for removal or Omari's request for

cancellation. The BIA later affirmed the IJ's decision.

Omari petitioned this court to review the BIA's order. Finding that the record did not establish that Omari had committed an aggravated felony, we vacated the BIA's order and remanded the case for further proceedings. *See Omari v. Gonzales*, 419 F.3d 303, 309–10 (5th Cir. 2005) (*Omari I*).

On remand, the IJ still found Omari removable but ultimately determined that he merited cancellation of removal. The IJ first concluded that, despite the additional evidence the Government had introduced on remand, Omari still had not been convicted of an aggravated felony. The IJ instead found Omari removable as an alien convicted of a crime of domestic violence and, alternatively, as an alien convicted of two or more crimes involving moral turpitude. Turning to Omari's application for cancellation of removal, however, the IJ weighed the equities and concluded that Omari merited cancellation.

The Government appealed the IJ's decision to the BIA, disputing the IJ's determination that Omari had not been convicted of an aggravated felony as well as the IJ's discretionary grant of cancellation. Omari did not file an appeal from the IJ's decision, but he did file a response brief that similarly focused on the aggravated felony and cancellation issues. The BIA agreed with the IJ that Omari had not been convicted of an aggravated felony but reversed the IJ's conclusion that Omari merited cancellation of removal. The BIA determined that the equities did not weigh in Omari's favor and noted a potential child support arrearage of $10,000. The BIA thus vacated the IJ's decision, denied Omari's application for cancellation of removal, and remanded the case to the IJ for entry of an order of removal.

Omari moved the BIA to reconsider its decision. *See* 8 C.F.R. § 1003.2(b). In his motion for reconsideration, Omari argued, inter alia, that (1) he was not removable because his Minnesota assault conviction was neither a crime of domestic violence nor a crime involving moral turpitude, (2) the BIA had

erroneously found him to owe $10,000 in unpaid child support, and (3) the BIA failed to give proper weight to factors meriting discretionary cancellation of removal. The BIA denied this motion. It first noted that Omari had failed to address his Minnesota assault conviction on appeal and could not do so for the first time in a motion for reconsideration. Second, the BIA refused to consider new evidence concerning Omari's child support obligations, noting that a motion for reconsideration was not the proper avenue for addressing new evidence. Third, the BIA concluded that Omari provided no reasons for reversing its determination that he did not merit cancellation. Finally, insofar as Omari's motion could be considered one to reopen based on evidence of his actual child support obligations, *see* 8 C.F.R. § 1003.2(c), the BIA found that Omari had failed to show that this evidence was previously unavailable or that it demonstrated a reasonable likelihood of success on the merits. The BIA thus ordered Omari removed to Kenya.

Omari now petitions this court to vacate the BIA's order of removal. Omari raises four arguments on appeal: (1) his Minnesota assault conviction is neither a crime of domestic violence nor a crime involving moral turpitude, (2) his federal conspiracy conviction is not a crime involving moral turpitude, (3) the BIA engaged in impermissible factfinding, and (4) the court should remand the case for a determination of whether he is eligible for waiver of removal under 8 U.S.C. § 1182(h).

## II. JURISDICTION

### A. Actual Exhaustion

As always, we have jurisdiction to determine our own jurisdiction. *Omari I*, 419 F.3d at 306. And although we generally have jurisdiction to review final orders of removal, 8 U.S.C. § 1252(a)(1), under 8 U.S.C. § 1252(d), we "may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." Petitioners fail to

4

exhaust their administrative remedies as to an issue if they do not first raise the issue before the BIA, either on direct appeal or in a motion to reopen. *See Heaven v. Gonzales*, 473 F.3d 167, 177 (5th Cir. 2006); *Wang v. Ashcroft*, 260 F.3d 448, 452–53 (5th Cir. 2001). This exhaustion requirement applies to all issues for which an administrative remedy is available to a petitioner "as of right." *Arce-Vences v. Mukasey*, 512 F.3d 167, 172 (5th Cir. 2007). A remedy is available as of right if (1) the petitioner could have argued the claim before the BIA, and (2) the BIA has adequate mechanisms to address and remedy such a claim. *See Toledo-Hernandez v. Mukasey*, 521 F.3d 332, 334 (5th Cir. 2008); *Falek v. Gonzales*, 475 F.3d 285, 291 (5th Cir. 2007). Since exhaustion in this context is a statutory (rather than prudential) mandate, failure to exhaust an issue deprives this court of jurisdiction over that issue. *Wang*, 260 F.3d at 452; *see also Roy v. Ashcroft*, 389 F.3d 132, 137 (5th Cir. 2004) (per curiam).

### 1. *Minnesota Assault Conviction*

Omari did not appeal the IJ's determination that his Minnesota assault conviction was a crime of domestic violence and a crime involving moral turpitude. Moreover, Omari did not challenge this determination in his brief before the BIA. His failure to do so is a failure to exhaust, jurisdictionally barring us from addressing the merits.

Granted, Omari did raise the issues regarding his Minnesota assault conviction in his motion for reconsideration, but we find this insufficient to satisfy § 1252(d). "A motion to reconsider challenges the [BIA]'s original decision and alleges that it is defective in some regard." *In re O-S-G*, 24 I. & N. Dec. 56, 57 (BIA 2006); *see also* 8 C.F.R. § 1003.2(b)(1) ("A motion to reconsider shall state the reasons for the motion by specifying the errors of fact or law in the prior [BIA] decision . . . ."). A motion for reconsideration is thus confined to the substance of the BIA's original decision. It is not the proper avenue for raising new issues or arguments, and "[a] motion to reconsider based on a legal

argument that could have been raised earlier in the proceedings will be denied." *O-S-G*, 24 I. & N. Dec. at 58. Instead, the party bringing a motion for reconsideration "must specify the factual and legal issues *raised on appeal* that were decided in error or overlooked in [the BIA's] initial decision." *Id.* (emphasis added). In short, an issue raised for the first time in a motion for reconsideration that could have been raised earlier has not been properly presented to the BIA. We therefore hold that improperly raising an issue for the first time in a motion for reconsideration does not satisfy § 1252(d)'s exhaustion requirement.

Because Omari did not initially raise any issues regarding his Minnesota assault conviction in his brief to the BIA and the BIA did not address them in its order, Omari's arguments regarding his Minnesota assault conviction were not the proper subject of a motion for reconsideration. As such, they were never properly raised before the BIA. Omari has therefore failed to exhaust his administrative remedies as to these issues, and § 1252(d) jurisdictionally bars us from addressing them.

### 2. *Federal Conspiracy Conviction*

Similarly, Omari neither appealed nor briefed the IJ's conclusion that his federal conspiracy conviction was a crime involving moral turpitude. Indeed, Omari never addressed this issue—even improperly—before the BIA. Omari has therefore failed to exhaust his administrative remedies as to this issue, and § 1252(d) jurisdictionally bars us from addressing it.

### 3. *Cancellation*

Omari contends that, in overturning the IJ's grant of cancellation of removal, the BIA committed legal error by making its own factual findings instead of properly deferring to those of the IJ. As this argument alleges a legal error in the BIA's decision, Omari necessarily did not address this issue in his initial brief to the BIA. Still, Omari raises this issue for the first time before this

court, and the BIA has never had the chance to address it. This court and others have previously held (albeit in unpublished decisions) that certain allegations of BIA error must first be brought to the BIA in a motion for reconsideration. *See Rivas de Williams v. Gonzales*, 239 F. App'x 46, 48 (5th Cir. 2007) (per curiam); *Manan v. Gonzales*, 131 F. App'x 12, 15 (3d Cir. 2005). Of particular relevance, the Tenth Circuit has held that allegations of impermissible factfinding by the BIA must first be brought before the BIA in a motion for reconsideration to satisfy exhaustion. *See Sidabutar v. Gonzales*, 503 F.3d 1116, 1122 (10th Cir. 2007). Along these lines, Omari could have brought his allegation of impermissible factfinding before the BIA in his motion for reconsideration, and we conclude that his failure to do so constitutes a failure to exhaust the issue.

This holding comports with our decisions on the necessity of raising new claims in a motion to reopen. We have "previously held that when a petitioner seeks to raise a claim not presented to the BIA and the claim is one that the BIA has adequate mechanisms to address and remedy, the petitioner must raise the issue in a motion to reopen prior to resorting to review by the courts." *Toledo-Hernandez*, 521 F.3d at 334 (quotation marks and alteration omitted); *see also Roy*, 389 F.3d at 137; *Wang*, 260 F.3d at 453; *Goonsuwan v. Ashcroft*, 252 F.3d 383, 388 (5th Cir. 2001). In *Toledo-Hernandez*, for example, the petitioner asserted for the first time before this court that the vacatur of his criminal conviction mandated the vacatur of his order of removal. 521 F.3d at 334. The petitioner explained that he never asked for such relief before the BIA because the vacatur of his criminal conviction occurred beyond the time in which he could file a motion to reopen. *Id.* We recognized that, because any resort to the BIA would have been untimely, the only way that the BIA could address the petitioner's new claim would be through an exercise of its *sua sponte* authority to reopen a case for exceptional circumstances. *Id.* at 335. We also

acknowledged that a motion to reopen was not generally required to satisfy § 1252(d). *Id.* at 336. But we held that the BIA's *sua sponte* authority was an available and adequate mechanism for the BIA to first address the petitioner's claim. *Id.* As such—and despite the seeming-contradiction of asking the BIA to act *sua sponte*, *see Wang*, 260 F.3d at 453—we required that a petitioner first present an issue to the BIA through a motion to reopen for exceptional circumstances for that issue to be exhausted, *Toledo-Hernandez*, 521 F.3d at 336.

The same reasoning applies to motions for reconsideration. A motion for reconsideration specifies the errors of fact or law in a prior decision. *See* 8 C.F.R. § 1003.2(b)(1). Such a motion is an available and adequate mechanism for the petitioner to argue, and the BIA to correct, any errors that arise in a BIA decision. This is not to say that a motion for reconsideration is generally required for exhaustion; if a party disagrees with the BIA's resolution of an issue previously raised before the BIA, there is no need to reargue this issue in a motion for reconsideration. But where the BIA's decision itself results in a new issue and the BIA has an available and adequate means for addressing that issue, a party must first bring it to the BIA's attention through a motion for reconsideration.

The issue Omari now raises regarding the BIA's decision illustrates the reasons for this requirement. Omari asserts that the BIA contravened its own regulations by engaging in impermissible factfinding when denying his request for cancellation of removal. He thus asserts that the BIA committed a legal error in its decision. This error involves an issue stemming from the BIA's act of decisionmaking, and was one that neither party could have possibly raised prior to the BIA's decision. But after the BIA issued its decision, Omari could have argued to the BIA that it had engaged in impermissible factfinding in his motion for reconsideration. In other words, Omari had an available and adequate means of presenting this argument to the BIA before bringing it to this

court, and § 1252(d) requires that he avail himself of it. If the BIA had found Omari's argument meritorious, it could have corrected this error. Yet Omari did not make this argument in his motion for reconsideration. Although he did argue that the BIA erred in finding that he owed more than $10,000 in child support, this argument challenged only the record support for the finding and not the act of factfinding itself. Thus, Omari never raised the issue of impermissible factfinding before the BIA. Because Omari has failed to exhaust his administrative remedies as to this issue, § 1252(d) jurisdictionally bars us from addressing it.

### 4. *Waiver of Removal Under 8 U.S.C. § 1182(h)*

Omari seeks, as an alternative form of relief, to have this case remanded for consideration of his claim that he should be granted a waiver of inadmissibility under 8 U.S.C. § 1182(h). Omari did not raise this issue before the BIA in his brief or motion for reconsideration. Again, Omari failed to exhaust this issue and we therefore lack jurisdiction to address it.

## B. Effective Exhaustion

Omari asserts that, despite the lack of any explicit mentioning of the present issues to the BIA, he effectively exhausted his claims. He argues that the issues he briefed before and discussed with the IJ and the BIA were sufficient to give the BIA adequate notice that he disputed the grounds of removability. Moreover, Omari contends that some of the issues he now raises overlap with one he did address in his brief to the BIA, namely, the argument that his federal conspiracy conviction was not an aggravated felony. Omari thus suggests that, even if he did not explicitly state his contention with all of the alternative grounds upon which the IJ eventually found him removable, the BIA had sufficient notice of—and opportunities to address—the issues he now raises.

We disagree, and take this opportunity to emphasize that parties must fairly present an issue to the BIA to satisfy § 1252(d)'s exhaustion requirement.

Such a requirement has been an implicit necessity of our prior decisions. Though rarely a point of emphasis, our cases on § 1252(d) have continually stated that a petitioner must "raise," "present," or "mention" an issue to the BIA to satisfy exhaustion. *See, e.g.*, *Toledo-Hernandez*, 521 F.3d at 335; *Heaven*, 473 F.3d at 177; *Roy*, 389 F.3d at 137; *Wang*, 260 F.3d at 452–53; *Goonsuwan*, 252 F.3d at 388. Implicit in these repeated statements is the suggestion that § 1252(d) requires some affirmative action on the part of a party. Such a reading is reinforced by those marginal cases where the sufficiency of raising an issue has been contested. In *Carranza-de Salinas v. Gonzales*, 477 F.3d 200, 206–07 (5th Cir. 2007), for example, we held that a petitioner sufficiently exhausted an issue by presenting it in a less-developed form to the BIA. Similarly, in *Burke v. Mukasey*, 509 F.3d 695, 696 (5th Cir. 2007) (per curiam), we held that a pro se petitioner's general argument to the BIA—that his conviction for possession of stolen property was not an aggravated felony—embraced the slightly more specific question of whether his conviction was a "theft offense." And in *Hongyok v. Gonzales*, 492 F.3d 547, 550 (5th Cir. 2007), we held that a semantic difference in the framing of an issue before this court and before the BIA did not raise any significant question of whether the issue was exhausted. In these cases, the petitioners made some concrete statement before the BIA to which they could reasonably tie their claims before this court. Omari, in contrast, has not. His failure to fairly present the issues he now brings on appeal constitutes a failure to exhaust.

Such a requirement is not needlessly technical or formalistic. Indeed, requiring the fair presentation of a contested issue is sound policy. First, requiring actual (as opposed to effective) exhaustion allows for efficient adjudication of immigration claims. One of the purposes of § 1252(d)'s exhaustion requirement is to provide the BIA, the agency with the expertise in immigration matters, with the opportunity to address immigration issues in the

first instance. *See Toledo-Hernandez*, 521 F.3d at 334; *Zhang v. Ashcroft*, 388 F.3d 713, 721 (9th Cir. 2004) (per curiam). An essential aspect of this purpose is providing the BIA with adequate notice of those issues it should address. *See Figueroa v. Mukasey*, 543 F.3d 487, 492 (9th Cir. 2008); *Zhang*, 388 F.3d at 721; *Zara v. Ashcroft*, 383 F.3d 927, 931 (9th Cir. 2004). Accepting Omari's claims of effective exhaustion would shift some of the burden of identifying contested issues from the parties to the BIA. And requiring the BIA to divine from the record all potentially-disputed issues would place a significant burden on the agency. Perhaps wary of leaving any issue unaddressed, the BIA might waste resources combing a petitioner's file and addressing issues that the parties had accepted as lost. The parties are in a better position than the BIA to identify all issues that they contest, and placing the burden of raising those issues on the parties provides an appropriate incentive.

Further, the fact that Omari raised some of these issues before the IJ but not the BIA is inadequate to satisfy § 1252(d)'s exhaustion requirement, as is the fact that he ultimately prevailed before the IJ. The IJ determined that Omari was removable as a threshold matter but then granted a discretionary cancellation of removal. We should neither expect nor desire that Omari appeal the IJ's threshold adverse determinations in spite of his ultimate victory. But after the government appealed the case to the BIA, Omari could have addressed these threshold issues in his brief. Omari's ultimate victory before the IJ did not alter the IJ's underlying conclusion that he was removable, and Omari should have realized that he was still subject to removal if the BIA reversed the IJ's discretionary grant of cancellation. We could view this situation through the legal fiction that Omari effectively conceded the correctness of the IJ's conclusions on these issues when he failed to contest them before the BIA. Perhaps more realistically, neither the parties nor the BIA are likely to have thought about addressing these underlying issues of removability. The question

11

thus becomes one of how best to give notice to the BIA that it should address a particular issue. Again, the more efficient way of doing this is placing the onus of raising issues on the parties.

Thus, in the interests of efficient adjudication, we refuse to saddle the BIA with the burden of identifying the substance of an immigration appeal. This is not to preclude the BIA from raising issues that the parties have seemingly abandoned, and should the BIA choose to do so, our exhaustion inquiry might be much different. *See Lin v. Attorney Gen.*, 543 F.3d 114, 122–26 (3d Cir. 2008) (discussing the circuit split on this issue). But claims that parties have effectively placed the BIA on notice that they contest an issue, even though they never actually stated as much to the BIA, have no place in our § 1252(d) exhaustion analysis. Instead, parties must fairly present their contentions to the BIA to satisfy exhaustion.

We note parenthetically that we expressly decline to address the specific question of how extensively a petitioner must raise an issue to satisfy § 1252(d). As much as we would like to provide guidance on this issue, Omari's case does not present sufficient facts that would adequately frame it for decision.

## C.    *Excusing Exhaustion*

Alternatively, Omari asks this court to excuse his failure to exhaust. He first suggests that our jurisdiction over legal and constitutional issues in the immigration context necessarily extends to the issues he now raises on appeal. Omari also attempts to invoke purported "exceptions" to § 1252(d)'s exhaustion requirement. Finally, Omari suggests that equity warrants excusing his failure to exhaust. We find each of these claims unavailing.

Omari first asserts that this court has jurisdiction over issues concerning his removability because review of the BIA's decision includes review of all factual and legal conclusions on which the order is contingent, including the asserted grounds for deportation. But this cannot be correct, for such an

interpretation of our jurisdiction would nullify § 1252(d)'s exhaustion requirement. That is, inherent jurisdiction over all legal issues underlying a BIA order would mean that a party's failure to exhaust these issues before the BIA would never bar this court from addressing them. Omari's suggestion of plenary and unconstrained appellate review in this court simply cannot coexist with § 1252(d)'s exhaustion requirement. And as Congress did not give us a general grant of jurisdiction over immigration appeals—much less the suggested plenary review—the fact that issues of Omari's removability underlie the BIA's order in no way excuses the necessity of exhaustion.

Omari's invocation of purported "exceptions" to § 1252(d) is similarly inapposite. Granted, we have sometimes spoken of "exceptions" to § 1252(d)'s exhaustion requirement. In *Goonsuwan*, for example, we stated, "Even when exhaustion is a jurisdictional bar, this Court recognizes an exception 'when administrative remedies are inadequate.'" 252 F.3d at 389 (quoting *Ramirez-Osorio v. INS*, 745 F.2d 937, 939 (5th Cir. 1984)). Later cases have emphasized, however, that for a remedy to be available "as of right" and thus fall under § 1252(d)'s exhaustion requirement, the BIA must have adequate mechanisms to address and remedy the claim. *See, e.g.*, *Toledo-Hernandez*, 521 F.3d at 334; *Arce-Vences*, 512 F.3d at 172. These "exceptions" to § 1252(d), then, are more appropriately characterized as situations in which § 1252(d)'s exhaustion requirement does not even apply because the particular relief is not available as of right.

This construction of § 1252(d) indicates that all of the issues Omari now raises fall squarely within its exhaustion requirement. The BIA had adequate mechanisms to address and remedy all of these issues. Moreover, Omari had a full and fair opportunity to present each of these issues to the BIA before raising them in his present petition. And there is no evidence of bias against Omari nor any indication that the BIA would not have fairly considered his claims. In

short, Omari could have made all of his present arguments to the BIA before petitioning this court for review. He did not, and his failure to do so is a failure to exhaust.

Finally, Omari has given us no reason to equitably excuse the exhaustion requirement. His failure to exhaust was not due to any third party's conduct or external circumstance. It was instead solely of his own doing, and none of our prior decisions would mandate excusing his failure to exhaust. In any event, we lack the authority to fashion a general equitable exception to § 1252(d)'s exhaustion requirement. In its recent decision in *Bowles v. Russell*, 127 S. Ct. 2360, 2364–66 (2007), the Supreme Court emphasized that there is a distinction between preconditions to appeal that are simply mandatory and those that are mandatory *and* jurisdictional. The former are those created by court rule or judicial decision, while the latter stem from jurisdictional limitations that Congress has statutorily created. *Id.* at 2365; *see also United States v. Martinez*, 496 F.3d 387, 388–89 (5th Cir.) (per curiam), *cert denied*, 128 S. Ct. 728 (2007). Thus, the *Bowles* Court held that Federal Rule of Appellate Procedure 4(a)(6)'s limit on reopening the time for filing a notice of appeal was a mandatory and jurisdictional requirement because it implemented 28 U.S.C. § 2107(c). 127 S. Ct. at 2363. Failure to comply with the statutory requirement embodied in Rule 4(a)(6), then, deprives a court of jurisdiction. *Id.* at 2366. In line with *Bowles*, we have held that Federal Rule of Appellate Procedure 4(b)(1)(A)'s time limit for filing notices of appeal in criminal cases is mandatory, but not jurisdictional, because it does not effectuate a statutorily-imposed limit. *Martinez*, 496 F.3d at 388–89.

The distinction between those requirements that are mandatory and those that are mandatory *and* jurisdictional is important because, according to the *Bowles* Court, we have "no authority to create equitable exceptions to jurisdictional requirements." 127 S. Ct. at 2366. While we can invoke doctrines

such as waiver or equitable excuse when a party fails to comply with judicially-created prudential preconditions to appeal, we cannot create our own exceptions to a jurisdictional bar that Congress—within the bounds of its constitutional authority—has explicitly set out in a statute.

Three circuits have recently examined § 1252(d) in light of *Bowles*. In *Grullon v. Mukasey*, 509 F.3d 107, 114 (2d Cir. 2007), *cert denied*, 129 S. Ct. 43 (2008), a petitioner asked the Second Circuit to excuse his failure to exhaust in light of the "manifest injustice" that would stem from dismissal. Though recognizing the potential merits of the petitioner's request, the court held that there was "no 'manifest injustice' exception to § 1252(d)'s exhaustion requirement" after *Bowles*. *Id*. at 115. According to the Second Circuit, "*Bowles* broadly disclaims the authority of the federal courts to create equitable exceptions to jurisdictional requirements." *Id*. at 116 (quotation marks omitted). Similarly, in *Bah v. Mukasey*, 521 F.3d 857, 859 (8th Cir. 2008), the Eighth Circuit relied on *Bowles* in refusing to create a futility exception to § 1252(d). And in *Massis v. Mukasey*, 549 F.3d 631, 640 (4th Cir. 2008), the Fourth Circuit invoked *Bowles* in holding that there was no "miscarriage of justice" exception to § 1252(d). According to these circuits, courts cannot "create an equitable exception to [§ 1252(d)]'s exhaustion requirement." *Id*.

We agree, and hold that we lack the authority to equitably excuse a party's failure to satisfy § 1252(d)'s exhaustion requirement. For this court to have jurisdiction over an issue that the BIA has adequate means of addressing, a petitioner must adequately raise that issue before the BIA. So long as it remains a statutory jurisdictional bar without any allowance of exceptions, compliance with § 1252(d) is necessary. We therefore have no authority to excuse Omari's failure to exhaust.

We recognize that our ruling imposes a strict exhaustion requirement on those petitioning this court to review a BIA order. We could brush off any

concerns over this strictness by noting, as the Supreme Court did in *Bowles*, that "[i]f rigorous rules like the one applied today are thought to be inequitable, Congress may authorize courts to promulgate rules that excuse compliance." 127 S. Ct. at 2367. But we think it better to suggest that such a construction makes sound jurisdictional sense. Our ruling should increase the likelihood that claims will be adequately addressed at the administrative level, rendering resort to this court unnecessary. In those cases that do come to our court, the arguments will likely be better refined in light of their presentation to and resolution by the BIA. And perhaps most importantly, today's ruling provides clear guidance to those proceeding before the BIA of the necessity of exhaustion, such that they will be able to avoid the pitfalls that prevent us from addressing the merits of the present petition.

## III. CONCLUSION

Regarding the issues that he now petitions this court to address, Omari has failed to exhaust all administrative remedies available to him as of right. Because this failure to exhaust deprives this court of jurisdiction, we DISMISS Omari's petition for review.

DISMISSED.