# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 14, 2021

Lyle W. Cayce
Clerk

No. 19-60767
Summary Calendar

———

Berta Alicia Baires-Lemos,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

———

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A206 251 103

———

Before Barksdale, Graves, and Oldham, *Circuit Judges*.

Per Curiam:*

Petitioner Berta Alicia Baires-Lemos, a native and citizen of El Salvador, first entered the United States illegally in 2013 and was removed. She reentered illegally in 2015 and applied for immigration relief. She has filed a petition seeking review of the Board of Immigration Appeals' (BIA)

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

affirming the immigration judge's (IJ) denial of her application for withholding of removal and protection under the Convention Against Torture (CAT).

Baires claims the BIA's decision upholding the IJ's denial of relief was erroneous because the IJ failed to ask her to articulate her proposed social group. She further asserts the BIA erred in upholding the IJ's finding that the threats she experienced in El Salvador did not rise to the level of persecution. Finally, she claims the BIA erred in upholding the IJ's conclusion that she had failed to prove it was more likely than not she would be tortured if returned to El Salvador.

"When the BIA affirms the IJ's decision without an opinion, as is the case here, the IJ's decision is the final agency decision for purposes of judicial review on appeal." *Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006). We review the immigration court's factual findings for substantial evidence; its legal conclusions, *de novo*. *Zhu v. Gonzales*, 493 F.3d 588, 594 (5th Cir. 2007).

According to Baires, she fled El Salvador with her youngest son because the gangs would not "leave [her] alone and in peace". She explained: her adult daughter's ex-boyfriend was the leader of a gang; and, after her daughter ended the relationship, he threatened to kill Baires and her youngest son.

While the ex-boyfriend threatened Baires' daughter many times via text messages, Baires only testified to isolated incidents of verbal harassment. She testified the ex-boyfriend had once confronted her on her way home from work and warned she should not "cross through" that part of town. Later, he stopped her in the street and asked her why she was prohibiting her daughter from seeing him. As the IJ noted, Baires was never physically harmed by the ex-boyfriend, and neither were any of her children. Indeed,

No. 19-60767

Baires' daughter, who was subjected to most of the ex-boyfriend's threats, continues to live in El Salvador and has not been harmed.

Baires has proven, at most, she suffered two incidents of harassment unaccompanied by physical harm or a significant deprivation of liberty. *See Eduard v. Ashcroft*, 379 F.3d 182, 187 n.4 (5th Cir. 2004) (defining persecution as "an extreme concept" requiring "more than a few isolated incidents of verbal harassment" (internal quotation marks and citation omitted)). As such, the evidence does not compel reversing the IJ's determination that Baires did not establish harm rising to the level of persecution warranting withholding of removal. *See Chen*, 470 F.3d at 1134.

According to Baires, it was erroneous for the IJ not to ask her to identify a particular social group (PSG). She contends: the proposed social groups of gender and family were raised in her testimony; and the IJ erred in failing to consider and make factual findings on those groups.

Before the BIA, Baires asserted she was a member of two PSGs: "people in fear of violence in El Salvador"; and "Salvadorian Women Seen as Vulnerable and Unprotected by [a] Criminal Gang Organization". These proposed social groups differ, however, from the groups raised in Baires' petition for review. For example, she contends that, through her testimony before the IJ, she "may have articulated" various family and gender based social groups, such as "Salvadoran mother of young single female unable to leave relationship with male partner".

Because Baires did not raise these proposed social groups in her appeal to the BIA, or otherwise challenge the IJ's purported error in failing to ask her to articulate a PSG, she has failed to exhaust her available remedies, and we lack jurisdiction to consider such claims. *See Omari v. Holder*, 562 F.3d 314, 321 (5th Cir. 2009).

3

Finally, the IJ reasonably denied Baires' request for protection under CAT. In seeking to establish one of the conditions that must be satisfied for such relief, although Baires testified she would be killed by her daughter's ex-boyfriend and his gang if she returned to El Salvador, as noted *supra*, there is no evidence in the record she was ever physically harmed by the ex-boyfriend or his gang. Baires identified only a single instance where the ex-boyfriend possibly threatened her, when she was on her way home from work.

Baires claims mental suffering can constitute the requisite torture under BIA precedent and the ex-boyfriend's persistent text messages to her daughter threatening the family satisfy the definition of torture. As Baires acknowledges, however, to constitute torture, mental pain and suffering must be "prolonged mental harm" caused by conduct such as "threatened infliction of severe physical pain or suffering" or "[t]he threat of imminent death" or "[t]he threat that another person will imminently be subjected to death". 8 C.F.R. § 208.18(a)(4). The ex-boyfriend's conduct would not cause the sort of mental pain and suffering protected against by CAT.

Baires' testimony regarding the murder of her cousin by gang members likewise does not establish "it is more likely than not" she will be tortured if returned to El Salvador. *Mwembie v. Gonzales*, 443 F.3d 405, 415 (5th Cir. 2006). As the IJ noted, while Baires speculated her daughter's ex-boyfriend was involved in the murder, she admitted she did not know why her cousin was killed or who had killed him.

DISMISSED in part; DENIED in part.