# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 10, 2022

Lyle W. Cayce
Clerk

No. 19-60355

LEON SANTOS-ZACARIA, ALSO KNOWN AS LEON SANTOS-SACARIAS,

*Petitioner*,

*versus*

MERRICK GARLAND, U.S. ATTORNEY GENERAL,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A098 372 949

Before OWEN, *Chief Judge*, and CLEMENT and HIGGINSON, *Circuit Judges*.

PRISCILLA R. OWEN, *Chief Judge*:

Leon Santos-Zacaria (Santos), a native and citizen of Guatemala, petitions for review of the Board of Immigration Appeals's (BIA's) decision denying her application for withholding of removal and for relief under the Convention Against Torture (CAT). We DENY in part and DISMISS in part for lack of jurisdiction.

## I

Santos, who is a transgender woman and is attracted to men, alleged that she was sexually assaulted by a neighbor in Guatemala at the age of 12 for being gay and asserted that she was likely to face persecution if she returned to Guatemala due to her sexual orientation and gender identity. The immigration judge (IJ) denied her application for withholding of removal, concluding that Santos's prior assault was insufficient to establish past persecution. The IJ also denied Santos's claim for relief under the CAT. Santos appealed to the BIA.

The BIA dismissed her appeal. First, the BIA concluded that Santos's allegation of sexual assault was sufficient to establish past persecution on account of membership in a particular social group. Consequently, Santos was entitled to a presumption of future persecution. However, the BIA ruled that the government had rebutted the presumption. The BIA also affirmed the IJ's ruling that Santos had not established eligibility for relief under the CAT. Finally, the BIA rejected an argument that the IJ ignored or failed to consider relevant evidence. Santos filed a timely petition for review.

## II

Santos contests the BIA's decision that she is not eligible for withholding of removal. Whether an applicant is eligible for withholding of removal is a factual determination that this court reviews under the substantial evidence standard.[1] "The substantial evidence standard requires only that the BIA's decision be supported by record evidence and be substantially reasonable."[2] "[R]eversal is improper unless we decide 'not

---

[1] *Zhang v. Gonzales*, 432 F.3d 339, 344 (5th Cir. 2005).

[2] *Omagah v. Ashcroft*, 288 F.3d 254, 258 (5th Cir. 2002).

No. 19-60355

only that the evidence supports a contrary conclusion, but [also] that the evidence *compels* it.'"[3]

"To be eligible for withholding of removal, an applicant must demonstrate a 'clear probability' of persecution upon return."[4] "A clear probability means that it is more likely than not that the applicant's life or freedom would be threatened by persecution on account of either h[er] race, religion, nationality, membership in a particular social group, or political opinion."[5] If an applicant proves past persecution, she is entitled to a rebuttable presumption of future persecution.[6]

## A

As an initial matter, Santos argues for the first time on appeal that the BIA engaged in impermissible factfinding. This court "may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right."[7] "[F]ailure to exhaust an issue deprives this court of jurisdiction over that issue."[8] "[A]llegations of impermissible factfinding by the BIA must first be brought before the BIA in a motion for reconsideration to satisfy exhaustion."[9] Accordingly, because

---

[3] *Zhang*, 432 F.3d at 344 (alteration in original) (quoting *Zhao v. Gonzales*, 404 F.3d 295, 306 (5th Cir. 2005)).

[4] *Roy v. Ashcroft*, 389 F.3d 132, 138 (5th Cir. 2004) (per curiam) (quoting *Faddoul v. INS*, 37 F.3d 185, 188 (5th Cir. 1994)).

[5] *Id.*

[6] 8 C.F.R. § 1208.16(b)(1)(i).

[7] 8 U.S.C. § 1252(d)(1).

[8] *Omari v. Holder*, 562 F.3d 314, 319 (5th Cir. 2009).

[9] *Id.* at 320.

No. 19-60355

Santos did not present this argument before the BIA in a motion for reconsideration, it is unexhausted, and we lack jurisdiction to consider it.

JUDGE HIGGINSON's dissenting opinion contends that this court has jurisdiction because of a request for potential additional factfinding in Santos's brief appealing the IJ's decision.[10] That request occurred before the BIA ruled on Santos's claims. It is unrelated to the factfinding Santos asserts the BIA made. The first objection she made to the BIA's alleged factfinding was in her brief to this court. Because this objection was not made to the BIA, Santos has not met the exhaustion requirement.

## B

Next, Santos asserts that the BIA's determination that the government rebutted the presumption of future persecution is not supported by substantial evidence. "The government may rebut th[e] presumption [of future persecution] by demonstrating that there has been a fundamental change in the circumstances of the country of removal, or that the applicant could avoid a future threat to h[er] life or freedom by reasonably relocating to a different part of the country of removal."[11] Santos further argues that the BIA erred by "lumping together Ms. Santos' claim as a homosexual Guatemalan and Ms. Santos' claim as a transgender Guatemalan."

The BIA accepted Santos's "proposed particular social groups, described as 'gay' and 'transgender,'" but nevertheless found that "the presumption of future persecution on account of [Santos's] homosexuality or transgender identity has been rebutted in this case." In reaching its conclusion, the BIA found that Santos acknowledged that she "would be able

---

[10] *Post* at 8 (citing ROA.29).

[11] *Arif v. Mukasey*, 509 F.3d 677, 681 (5th Cir. 2007) (per curiam).

to safely relocate within Guatemala." Santos argues that the BIA mischaracterized her statements and that she never stated that she could safely relocate.

During cross-examination at a hearing before the IJ, the government questioned Santos about cities in Guatemala that have pride parades and where people participate in "gay and lesbian lifestyles." The government then asked, "[b]ut if you know of cities that are open to gay and lesbian and transgender lifestyles you would rather move to those cities than the one you lived in correct?" Santos replied, "[y]es, probably there is another place where I can live down there but I don't but I try to stay here to get this protection because besides that I have a brother living here so I'm trying to have him help me." Because Santos agreed that there was probably a place where she could safely relocate within Guatemala, the BIA's determination that the government rebutted the presumption of future persecution is supported by substantial evidence for both of Santos's particular social groups.

Judge Higginson's dissenting opinion views Santos's statement as "vague and equivocal" because it was made in response to a hypothetical question and through an interpreter.[12] We do not agree with the characterization of Santos's statement as vague and equivocal. The BIA reasonably interpreted her statement to mean that she did in fact know of a city or cities in Guatemala where it was probably safe for gay and transgender people to live. As the Supreme Court has explained, "[t]he BIA's determination that [an alien] was not eligible for asylum must be upheld if 'supported by reasonable, substantial, and probative evidence on the record

---

[12] *Post* at 10.

considered as a whole.'"[13] Such a determination "can be reversed only if the evidence presented by [the alien] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed."[14]

"[A]n applicant cannot demonstrate that his or her life or freedom would be threatened if the asylum officer or immigration judge finds that the applicant could avoid a future threat to his or her life or freedom by relocating to another part of the proposed country of removal and, under all the circumstances, it would be reasonable to expect the applicant to do so."[15] Because the BIA's determination that Santos could reasonably relocate within Guatemala is supported by substantial evidence, the BIA did not err in concluding that Santos is ineligible for withholding of removal.

## III

Santos also challenges the BIA's determination that she is not eligible for relief under the CAT. To be eligible for relief under the CAT, an applicant bears the burden to "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal."[16] "Torture is defined as any act by which severe pain or suffering . . . is intentionally inflicted on a person . . . for any reason based on discrimination of any kind, when such pain or suffering is inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity."[17] Whether an

---

[13] *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (citing 8 U.S.C. § 1105a(a)(4)) (current version at 8 U.S.C. § 1252).

[14] *Id.*

[15] 8 C.F.R. § 1208.16(b)(2).

[16] *Id.* § 1208.16(c)(2).

[17] *Id.* § 1208.18(a)(1).

applicant is eligible for relief under the CAT is a factual determination that we review for substantial evidence.[18]

First, Santos asserts that neither the IJ nor the BIA adequately analyzed her CAT claim. We lack jurisdiction to review Santos's challenge to the adequacy of the BIA's analysis because Santos could have raised this argument in a motion for reconsideration before the BIA but failed to do so.[19] As to the IJ's analysis, the IJ is merely required to show "that it consider[ed] the issues raised, and [to] announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted."[20] The IJ's decision, which set out the pertinent law and relevant facts surrounding Santos's claim for relief under the CAT, adequately conveyed the reasoning behind denying the claim.

Second, Santos challenges the merits of her CAT claim, arguing that she faces a risk of torture from disparate groups in Guatemala, and that the probability of torture from these groups should have been aggregated. Even giving full weight to Santos's evidence, the evidence does not compel a finding that she will be tortured with the consent or acquiescence of a public official in Guatemala.[21]

\* \* \*

For these reasons, Santos's petition for review is DENIED in part and DISMISSED in part for lack of jurisdiction.

---

[18] *Zhang v. Gonzales*, 432 F.3d 339, 344 (5th Cir. 2005).

[19] *See Omari v. Holder*, 562 F.3d 314, 319-21 (5th Cir. 2009).

[20] *Efe v. Ashcroft*, 293 F.3d 899, 908 (5th Cir. 2002) (quoting *Becerra–Jimenez v. INS*, 829 F.2d 996, 1000 (10th Cir. 1987)).

[21] *See* 8 C.F.R. § 1208.18(a)(1).

No. 19-60355

Stephen A. Higginson, *Circuit Judge*, dissenting:

The Board exceeded its scope of review by engaging in impermissible factfinding. The Immigration Judge concluded that Santos did not suffer past persecution on account of a protected ground, so it did not reach the question of whether DHS had rebutted the presumption of future persecution. When the Board, in a single-member decision, determined that "the presumption of future persecution . . . has been rebutted in this case," it engaged in factfinding not permitted by the regulations.[1] 8 C.F.R. § 1003.1(d)(3)(iv); *see also Singh v. Barr*, 920 F.3d 255, 259 (5th Cir. 2019) (BIA finding that DHS has rebutted the presumption of future persecution is a factual finding reviewed for substantial evidence). Santos adequately requested that the Board remand her case for additional factfinding,[2] so we have jurisdiction to review this claim. *See Omari v. Holder*, 562 F.3d 314, 324 (5th Cir. 2009). I would remand.

Even if it were a valid exercise of its authority, the Board's decision is not supported by substantial evidence. The Government may rebut a presumption of future persecution by "demonstrating that there has been a fundamental change in the circumstances of the country of removal, or that the applicant could avoid a future threat to his life or freedom by reasonably relocating to a different part of the country of removal." *Arif v. Mukasey*, 509 F.3d 677, 681 (5th Cir. 2007). The Government has not made either showing.

---

[1] On appeal, the Government cites *Enriquez-Gutierrez v. Holder*, 612 F.3d 400, 409–10 (5th Cir. 2010) to suggest that administratively noticeable factfinding by the Board is permissible. The decision in *Enriquez-Gutierrez*, however, is manifestly inapt, as it pertains to appropriate administrative notice of a stipulated prior conviction, *id.* at 411, not crediting a cross-examination remark over direct testimony the IJ found credible.

[2] ROA.29.

Regarding country conditions, the Government's evidence suggests that gay and transgender persons regularly face violence, harassment, and discrimination in Guatemala. The United States Department of State 2017 Human Rights Report on Guatemala, submitted by the Government but not discussed by the Board, lists one of "[t]he most significant human rights issues" in Guatemala as "police violence against lesbian, gay, bisexual, transgender, and intersex individuals." The report also notes that "[t]here was general societal discrimination against LGBTI persons in access to education, health care, employment, and housing" and that "[t]he government undertook minimal efforts to address this discrimination." In addition, Santos's two return trips to Guatemala are not probative of changed country conditions; she needed to conceal her transgender identity by wearing male clothing and cutting her hair, hire private transportation, and hide in her parents' home for the duration of both visits. "The case law is clear that an alien cannot be forced to live in hiding in order to avoid persecution." *Singh v. Sessions*, 898 F.3d 518, 522 (5th Cir. 2018).

Regarding the possibility of relocation within Guatemala, the Government makes much of Santos's alleged "acknowledgement" that she could safely relocate. This is a gross mischaracterization of the record. On direct examination before the Immigration Judge, Santos categorically *denied* that she could live safely anywhere within Guatemala:

> [Santos's Counsel]: And last question. Is there anywhere that you think that you could safely live in Guatemala?

> [Santos]: No. That whole country Guatemala it's going to be the same for me because there is no police in—anywhere that is going to protect me so I'm not going to get what I'm looking for so that's why I want to stay in this country because I know I'm going to have that protection here.

No. 19-60355

But the Government fixates instead on a fragment of a hypothetical considered by Santos during cross-examination:

> [Government]: And did you ever try to move to a city that was more open and free than the one that you grew up in as a child?
>
> [Santos]: But I don't know where to go down there.  I don't know who would—kind—what kind of people I'm going to get there to live there.
>
> [Government]: But if you know of cities that are open to gay and lesbian and transgender lifestyles you would rather move to those cities than the one you lived in correct?
>
> [Santos]: Yes, probably there is another place where I can live down there but I don't but I try to stay here to get this protection because besides that I have a brother living here so I'm trying to have him help me.[3]

Santos's vague and equivocal statement in response to the Government's hypothetical question[4] does not constitute an admission that she could safely relocate within Guatemala, where she was twice raped.

I respectfully dissent.

---

[3] Although it urged this court to rely on this hypothetical, the Government during oral argument before our court could not "recall[] that specific snippet of the record" in which Santos *categorically* denied being unable to relocate safely within Guatemala.  U.S. Court of Appeals for the Fifth Circuit, *19-60355 Santos-Zacaria v. Garland, April 28, 2021*, YOUTUBE at 20:15 (May 18, 2021), https://youtu.be/zt3ssKgUtpQ?t=1215.

[4] Throughout the exchange, Santos spoke in Kanjobal, a Mayan language spoken in parts of Guatemala, through an interpreter.