# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 1, 2022

Lyle W. Cayce
Clerk

No. 20-60601

DELSY DINORA FLORES-FLORES, *also known as* ALEXANDRA
YOLIVETH FLORES-FLORES,

*Petitioner*,

*versus*

MERRICK GARLAND, *U.S. Attorney General*,

*Respondent*,

CONSOLIDATED WITH

No. 20-60603

ARLETH IVAN FLORES-FLORES,

*Petitioner*,

*versus*

MERRICK GARLAND, *U.S. Attorney General*,

*Respondent*.

No. 20-60601
c/w No. 20-60603

---

Petitions for Review of Orders
of the Board of Immigration Appeals
Agency No. A206 727 342
Agency No. A208 976 285

---

Before RICHMAN, *Chief Judge*, and WIENER and WILLETT, *Circuit Judges*.

PER CURIAM:*

Petitioners Delsy Flores-Flores and her son, Arleth, are citizens of Honduras. Delsy testified that, starting when she was fourteen years old, she was harassed and threatened by another resident of her Honduran village named Amilcar Gonzalez. In 2014, Amilcar killed Delsy's uncle to make it easier to abuse her. From that day onwards, Amilcar broke into her home every night to sexually abuse her. Delsy fled Honduras in December 2015 to get away from Amilcar. She crossed into the United States twice and was deported both times. She tried a third time in April 2016, this time bringing Arleth with her. She and Arleth have remained in the United States as their asylum cases have worked their way through multiple rounds of hearings, appeals, and changes of counsel.

The immigration judge (IJ) who conducted Petitioners' "reasonable fear" interviews consolidated their cases. Their counsel before the IJ asserted that Petitioners were a part of a particular social group (PSG) defined as "[w]omen and their children who are targeted by organized crime through threats of violence and where neither the government nor the authorities are willing to protect them." The IJ found that Delsy's testimony was vague, contained embellishments and "at least one implausibility," and

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

was generally "not credible." The IJ also found that, even if Delsy's testimony had been credible, Petitioners failed to establish a cognizable PSG and failed to establish a nexus from the harm she incurred to a protected ground. Accordingly, the IJ denied the Petitioners' applications for asylum, withholding of removal, and protection under the CAT, and ordered that they be removed from the United States.

Petitioners appealed the IJ's decision to the BIA with the assistance of new counsel. The BIA affirmed the IJ's finding that the PSG proposed in the former decision was not cognizable and declined to address other portions of the IJ's decision.

Petitioners acquired new counsel yet again and sought to reopen the case under *Matter of Lozada*, claiming that both former attorneys "provided [them] with ineffective assistance of counsel that ruined [their] case and deprived [them] of [their] due process rights." Specifically, Petitioners alleged that their first attorney was ineffective because he asserted "an invalid particular social group thus leading Respondent's case to certain failure." They argued that effective counsel would have proposed one of four alternative, cognizable PSGs. Similarly, Petitioners alleged that their second attorney was ineffective because she failed to address the cognizability issues of the PSG. Finally, Petitioners and their third attorney raised an ineffective assistance of counsel (IAC) claim against the second attorney, arguing that she was ineffective because she failed to file an IAC claim against the first attorney. The BIA denied the Petitioners' motions to reopen on all three grounds, and it is this denial that Petitioners ask us to review.

I

When reviewing motions to reopen BIA decisions, we apply "a highly deferential abuse-of-discretion standard, regardless of the basis of the alien's

request for relief." *Gomez-Palacios v. Holder*, 560 F.3d 354, 358 (5th Cir. 2009). We affirm the BIA's decisions under this standard unless they are "capricious, racially invidious, utterly without foundation in the evidence, or otherwise so irrational that it is arbitrary rather than the result of any perceptible rational approach." *Singh v. Gonzales*, 436 F.3d 484, 487 (5th Cir. 2006) (quoting *Zhao v. Gonzales*, 404 F.3d 295, 304 (5th Cir. 2005)). On the other hand, we review BIA's legal conclusions de novo. *See id.* We must resolve three issues in this appeal: (1) Do we have jurisdiction to hear Petitioners' claim that the BIA abused its discretion by not offering a sufficient legal explanation for its ruling; (2) Should Petitioners' IAC claims be dismissed for failure to demonstrate substantial prejudice; and (3) Did the BIA abuse its discretion by refusing to reopen Petitioners' case sua sponte?

A

Petitioners first contend that the BIA abused its discretion and erred as a matter of law by "offer[ing] no explanation or authority for its conclusions" when ruling on whether they were prejudiced by their first attorney. Before we can rule on an issue's merits, however, we must consider whether we have jurisdiction to consider it. *See Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). We raise questions of jurisdiction even if they are not addressed by the parties. *Id.* at 919.

"A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). "Petitioners fail to exhaust their administrative remedies as to an issue if they do not first raise the issue before the BIA, either on direct appeal or in a motion to reopen." *Omari v. Holder*, 562 F.3d 314, 318 (5th Cir. 2009). True, claims that "involve[] an issue stemming from the BIA's act of decisionmaking," like this one, cannot "possibly [be] raised

prior to the BIA's decision." *Id.* at 320–21. But such arguments can be exhausted by moving the BIA to reconsider. *See id.* ("[W]here the BIA's decision itself results in a new issue and the BIA has an available and adequate means for addressing that issue, a party must first bring it to the BIA's attention through a motion for reconsideration."). Because Petitioners failed to do so and raise that issue for the first time today, we lack jurisdiction to consider this unexhausted claim. *See id.*

B

Petitioners contend they received ineffective assistance of counsel because (1) their first counsel failed to raise meritorious alternative PSGs to which Petitioners belong, (2) their second counsel similarly overlooked meritorious alternative PSGs, and (3) their second counsel erred by failing to bring IAC claims against their first counsel. It is not enough for Petitioners to simply show that prior counsel made a mistake. They must show that they were "substantially prejudiced" by their counsel's unprofessional actions—that is, they must show that "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Diaz v. Sessions*, 894 F.3d 222, 228 (5th Cir. 2018) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

Petitioners must show that prior counsel overlooked a cognizable PSG to succeed on any of their three IAC claims. To be cognizable, a PSG must: "(1) consist of persons who share a common immutable characteristic; (2) be defined with particularity; and (3) be socially visible or distinct within the society in question." *Gonzales-Veliz v. Barr*, 938 F.3d 219, 229 (5th Cir. 2019) (citing *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 234–49 (BIA 2014)). Petitioners point to four proposed PSGs. But we agree with the BIA that none of these four proposed alternatives were cognizable.

No. 20-60601
c/w No. 20-60603

The first two proposed alternatives, "Honduran women" and "Honduran mothers," fail the particularity requirement. Particularity is lacking when the proposed PSG "encompasses a wide swath of society crossing many political orientations, lifestyles, and identifying factors." *Orellana-Monson v. Holder*, 685 F.3d 511, 521–22 (5th Cir. 2012). "Honduran women" and "Honduran mothers" include people from every political orientation, religion, and income class in Honduras. We previously rejected a nearly identical PSG because it lacked particularity, and we see no reason to deviate from that course here. *See Gomez-Lara v. Rosen*, 833 F. App'x 582, 583 (5th Cir. 2021) (per curiam) (holding that petitioner failed to show error when the IJ held that the PSG "women in Honduras" lacked particularity).

The third alternative, "young Honduran women living without a male domestic partner," is not cognizable because it fails the social visibility requirement. Social visibility requires that the group be "readily identifiable in society" and that society "perceive those with the characteristic in question as members of a social group." *Orellana-Monson*, 685 F.3d at 519. Petitioners' only evidence that this group is socially visible and distinct is the fact that Honduras criminalizes rape and gender-based violence. Petitioners argue that because these laws protect "women who live alone or refuse to obey the dangerous criminal gangs," Hondurans must recognize this group as socially distinct. But this does not follow. Honduras's laws forbidding rape and gender-based violence protect everyone living within its borders—not just "young Honduran women living without a male domestic partner." We recently dismissed a similar PSG for lacking social visibility and do the same here. *Morales-Duran v. Barr*, 770 F. App'x 200, 200–01 (5th Cir. 2019) (per curiam) (upholding the BIA's ruling that "unprotected women who are targeted by gangs" was insufficiently particular and lacked social visibility).

6

Petitioners' final proposed PSG, "Honduran women who refuse to submit to the authority of criminal gang members," similarly lacks social visibility. Petitioners have offered no evidence beyond conclusory statements that such a group is "readily identifiable in society." *Orellana-Monson*, 685 F.3d at 519. We rejected a similar PSG defined as "Salvadoran males . . . who . . . have refused to join [Mara 18] due to a principled opposition to gangs" because "there is little evidence that people who were recruited to join gangs but refused to do so would be 'perceived as a group' by society." *Id.* at 522. Petitioners' fourth proposed PSG fails for the same reason.

Because none of Petitioners' proposed alternate PSGs are cognizable, they cannot show that their prior attorneys rendered ineffective assistance.

## C

Finally, Petitioners contend that the BIA erred in finding that their case did not merit reopening sua sponte. We agree with the BIA that Petitioners did not receive ineffective assistance of counsel, much less ineffective assistance amounting to a "gross miscarriage of justice." But even more importantly, we lack jurisdiction to review this claim at all.

Discretion whether to reopen a case sua sponte rests with the BIA. 8 C.F.R. § 1003.2. We held in *Enriquez-Alvarado v. Ashcroft* that we lack jurisdiction to review such claims because "no meaningful standard exists against which to judge an IJ's decision to exercise *sua sponte* authority to reopen deportation proceedings." 371 F.3d 246, 249 (5th Cir. 2004), *overruled on other grounds by Mata v. Lynch*, 576 U.S. 143, 149–51 (2015). And we have subsequently rejected claims that there is a "gross miscarriage of justice" or "exceptional circumstances" exception to that rule. *See Mejia v. Sessions*, 723 F. App'x 266, 267 (5th Cir. 2018) (per curiam); *Castillo v. Lynch*,

653 F. App'x 800, 800–01 (5th Cir. 2016) (per curiam); *Tarango v. Holder*, 592 F. App'x 293, 296 (5th Cir. 2014) (per curiam).

Petitioners argue that the Supreme Court's recent opinion in *Guerrero-Lasprilla v. Barr* provides a workaround. 140 S. Ct. 1062, 1068 (2020). *Guerrero-Lasprilla* recognized that courts have jurisdiction over "questions of law" decided by immigration judges, including "the application of a legal standard to undisputed or established facts." *Id.* But *Guerrero-Lasprilla* did not undermine our holding in *Enriquez-Alvarado*. An agency's refusal to exercise discretionary authority is not a "question of law." Indeed, exercise of discretion does not involve the "application of a legal standard" because, as *Enriquez-Alvarado* recognized, that decision is not judged against a "meaningful standard" at all—legal or otherwise. *Sow Bolo v. Barr*, 828 F. App'x 295, 298 (6th Cir. 2020) (per curiam) (likewise concluding that *Guerrero-Lasprilla* was inapplicable "because that case did not involve a request for sua sponte reopening").

II

The petitions for review are DISMISSED in part for lack of jurisdiction and DENIED in part.