# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
April 3, 2019

Lyle W. Cayce
Clerk

No. 17-60821

CHARNJIT SINGH; MANJEET KAUR; KRISHAN PREET SINGH; SIMAR PREET KAUR,

Petitioners,

v.

WILLIAM P. BARR, U.S. ATTORNEY GENERAL,

Respondent.

Petition for Review of an Order
of the Board of Immigration Appeals

Before STEWART, Chief Judge, and DAVIS and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

Petitioners Charnjit Singh and his family members, who are natives and citizens of India, petition for review of an order of the Board of Immigration Appeals (BIA) denying them relief from removal. We deny their petition for review.

I.

Charnjit Singh, his wife Manjeet, and their two children Krishan and Simar came to the United States on temporary tourist visas but overstayed their authorized period of stay. When the Department of Homeland Security (DHS) initiated removal proceedings against the Singhs, they conceded

No. 17-60821

removability but sought relief from removal by applying for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).  The immigration judge (IJ) held a hearing in which the Singhs offered various types of testimonial and documentary evidence.

The basis of the Singhs' claim for relief was that Charnjit feared returning to India because of the past harm that Charnjit had suffered between the late 1980s and early 1990s on account of his political involvement in the Khalistan movement that sought to create a separate Sikh nation in the Punjab region of India.[1]  In his testimony, Charnjit recounted that he witnessed "Operation Blue Star" in 1984 in which government forces attacked and massacred many Sikhs.  This experience prompted Charnjit to join the Khalistan movement.  Charnjit also testified that, because of his involvement in the Khalistan movement, the Punjabi police placed him on a list of terrorists and detained him in 1986, 1992, and 1993.  During his 1992 detention, Charnjit was physically mistreated and suffered a permanent injury to one of his fingers.  During the cross-examination by the DHS, Charnjit stated that, at his wife's insistence, he "steered away from [the] Khalistan movement" and was no longer active in the movement after 1993.

Charnjit testified that although his family eventually moved away to Delhi, the Punjabi police traveled outside of their jurisdiction to kidnap, physically abuse, and extort money from Charnjit.  For example, in 2001, 2008, and 2009, Charnjit had to pay significant bribes to ransom himself or his wife out of detention and to avoid harassment.

The IJ found that Charnjit suffered past persecution on account of his religion and political opinion, thus entitling Charnjit a rebuttable presumption

---

[1] Manjeet, Krishan, and Simar filed claims that were derivative of Charnjit's claims. *See* 8 U.S.C. § 1158(b)(3)(A) (generally affording derivative asylee status to the spouse or child of a person granted asylum).

2

No. 17-60821

of future persecution. However, the IJ also found that the DHS rebutted the presumption of future persecution by showing a fundamental change in circumstances. Specifically, the IJ determined that "a twenty year span of intermittent encounters with the Punjab police has evolved to little more than extortion," not persecution on the basis of political opinion. The IJ also noted that more than 30 years had passed since the Indian government's raid on its Sikh citizens and more than 20 years had passed since Charnjit had been politically active. Finally, the IJ observed that Charnjit left and returned to India several times after 2004 and that his family did not have any police encounters in the four years before their departure to the United States.[2]

The Singhs appealed to the BIA on the basis that the IJ erred in ruling that the DHS rebutted the presumption of future persecution. The Singhs emphasized that the DHS did not present any evidence of its own other than cross-examining Charnjit and Manjeet. The Singhs, however, did not appeal the denial of withholding of removal or protection under the CAT. The BIA dismissed the Singhs' appeal because it concluded that the DHS had rebutted the presumption of future persecution by establishing a change in circumstances.[3] The Singhs timely filed a petition for review.

---

[2] The IJ also determined that the Singhs could reasonably relocate to another part of India, which further supported that the DHS rebutted the presumption of a well-founded fear. The relocation issue is not before this court as the BIA expressly declined to address this ground for denying relief.

[3] The Singhs also challenged the IJ's denial of humanitarian asylum before the BIA. In contrast to a typical asylum claim, which requires a well-founded fear of future persecution, "humanitarian asylum" may be granted for an alien without a well-founded fear of persecution who has shown (1) "compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution" or (2) "a reasonable possibility that he or she may suffer other serious harm upon removal to that country." 8 C.F.R. § 1208.13(b)(1)(iii); see also Matter of L-S-, 25 I. & N. Dec. 705, 710 (BIA 2012). The BIA, however, concluded that the Singhs waived any challenge to the denial of humanitarian asylum by failing to make specific arguments about the issue in their notice of appeal and by failing to address the issue in their brief. The Singhs' opening brief in support of the petition

No. 17-60821

## II.

We have "the authority to review only the BIA's decision, not the IJ's decision, unless the IJ's decision has some impact on the BIA's decision." *Wang v. Holder*, 569 F.3d 531, 536 (5th Cir. 2009). We review factual findings for substantial evidence and "may not reverse the BIA's factual findings unless the evidence compels it." *Id.* at 536–37; 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary").

## III.

In their petition for review, the Singhs contend that the BIA should have granted asylum because the DHS failed to rebut the presumption of future persecution. We disagree and hold that substantial evidence supports the BIA's denial of the Singhs' application for asylum.

To establish an asylum claim, an alien must show that he is "unable or unwilling to return to . . . [his native] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). An alien typically bears the burden of establishing that he or she is entitled to asylum. 8 C.F.R. § 208.13(a). The alien may qualify for asylum because of past persecution or because of a well-founded fear of future persecution. *Id.* § 208.13(b). If the alien establishes that he has suffered past persecution, then he is also "presumed to have a well-founded fear of persecution." *Id.* § 208.13(b)(1). Nevertheless, "an immigration judge, in the exercise of his or her discretion, shall deny the asylum application of an alien

---

for review does not address the BIA's conclusion that they waived the humanitarian asylum issue. Therefore, we will not address this issue. *See* Fed. R. App. P. 28(a)(8)(A) (requiring opening briefs to contain an "appellant's contentions and the reasons for them"); *Maria S. ex rel. EHF v. Garza*, 912 F.3d 778, 782 n.3 (5th Cir. 2019).

found to be a refugee on the basis of past persecution" if the DHS rebuts the presumption of future persecution by establishing one of two conditions by "a preponderance of the evidence." *Id.* § 208.13(b)(1)(i). First, the DHS may rebut the presumption of future persecution if it can show that "[t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality . . . ." *Id.* § 208.13(b)(1)(i)(A). Second, the DHS may rebut the presumption by showing that "[t]he applicant could avoid future persecution by relocating to another part of the application's country of nationality . . . ." *Id.* § 208.13(b)(1)(i)(B).

Here, because the IJ concluded that Charnjit suffered past persecution for his religion and political opinion, the Singhs were entitled to the presumption of future persecution. *See id.* § 208.13(b)(1). The DHS bore the burden of rebutting that presumption by showing either that a fundamental change in circumstances has occurred or that it would be reasonable to relocate to a different part of India. *See id.* § 208.13(b)(1)(i). The BIA determined that the DHS rebutted the presumption by showing that the circumstances have fundamentally changed.

Substantial evidence supports the BIA's conclusion. As adduced from the DHS's cross-examination of Charnjit, Charnjit was no longer politically active after 1993. The Punjabi police stopped persecuting Charnjit for his political opinion. Instead, Charnjit's own testimony supports the conclusion that the Punjabi police mistreated him and his family to extort money. Indeed, as the IJ observed, the intermittent encounters with the Punjabi police over a twenty-year period evolved into none other than extortion. Extortion is not a cognizable form of persecution under immigration law. *Ramirez-Mejia v. Lynch*, 794 F.3d 485, 493 (5th Cir. 2015); *Castillo-Enriquez v. Holder*, 690 F.3d 667, 668 (5th Cir. 2012). By showing that harm based on religious views and

political activism turned into mere harm based on extortion, the DHS sufficiently showed that the circumstances have fundamentally changed and that the Singhs no longer have a well-founded of fear of persecution on account of Charnjit's political opinion.   Thus, the BIA's finding of changed circumstances is supported by substantial evidence.

The Singhs resist this conclusion on three grounds, none of which is persuasive.  First, the Singhs argue that the DHS failed to meet its burden. Specifically, the Singhs contend that the DHS can rebut the presumption of future persecution only by affirmatively submitting *its own* evidence into the record.  In their view, because the DHS merely cross-examined Charnjit, this was insufficient to rebut the presumption.  We reject this argument.  At threshold, the preponderance-of-the-evidence standard does not turn on the "the greater number of witnesses" or quantity of documentary evidence "testifying to a fact"; instead, it turns on "[t]he greater weight of the evidence." Blue Br. at 14 (quoting *Preponderance of the Evidence*, *Black's Law Dictionary* (9th ed. 2009)).  And as the Singhs concede in their brief to this court, cross-examination of a witness constitutes testimonial evidence in the record.  Blue Br. at 17, 19.  Accordingly, the DHS's reliance on cross-examination, although not voluminous, can sustain the DHS's burden of proof as long as the testimony is legally sufficient.  Moreover, the argument that the DHS must affirmatively submit its own documentary evidence or summon its own witnesses is belied by the text of the regulation, which simply requires the DHS to rebut the presumption by the preponderance of *the* evidence, not by *its* evidence.  *See* 8 C.F.R. § 208.13(b)(1)(ii).  Therefore, we see no error with the Board's conclusion that the DHS met its burden.

Second, the Singhs argue that the IJ allegedly unfairly participated in cross-examination and violated due process by shifting the burden of proof when he found that the DHS carried its burden without submitting its own

evidence.  The Singhs did not raise these arguments before the BIA but have raised them for the first time in their petition for review before us.  We lack jurisdiction to address issues that were not raised before the BIA.  *Omari v. Holder*, 562 F.3d 314, 319 (5th Cir. 2009) ("[F]ailure to exhaust an issue deprives this court of jurisdiction over that issue.").  Thus, we will not address this argument.

Third, the Singhs contend that the IJ's analysis—later affirmed by the BIA—failed to account for mixed motives on the part of the Punjabi police.  In the Singhs' view, the police harmed Charnjit both for money and due to his political and religious views.  *See* 8 U.S.C. § 1158(b)(1)(B)(i) (requiring that persecution based on a protected ground be "at least one central reason" for the persecution).  The Singhs never presented this argument to the BIA, either, and we lack jurisdiction to address this issue.  *See Omari*, 562 F.3d at 319.  Thus, we will not address this argument.

IV.

We DENY the petition for review.