# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 29, 2021

Lyle W. Cayce
Clerk

No. 19-60707

Gibrann A. Valdez Coria,

*Petitioner*,

*versus*

Merrick Garland, U.S. Attorney General,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A215 549 406

Before Jones, Southwick, and Engelhardt, *Circuit Judges*.
Per Curiam:*

The petitioner entered the United States from Mexico without authorization. The Board of Immigration Appeals ordered his removal, rejecting all his claims, including that authorities in Mexico have been unable or unwilling to prevent his persecution for being homosexual. We conclude that no error has been shown and DENY the petition for review.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 19-60707

## FACTUAL AND PROCEDURAL BACKGROUND

Gibrann Valdez Coria is a native and citizen of Mexico. He and his male partner lived in the Mexican city of Morelia. He testified at the hearing before an Immigration Judge ("IJ") that he and his partner had revealed their relationship to their families but remained discreet in public to avoid harassment. Still, Valdez Coria claims he was harassed multiple times in his hometown for being homosexual.

Once, in 2014, while Valdez Coria and his partner were playing basketball, two armed men approached them and attempted to rob them. Valdez Coria recalled that the armed men called them "young ladies," which he believes supports they were targeted for being gay. They were able to escape. Despite neighbors calling the police, the police never came. Earlier that same year, another event took place at a local bus terminal. There, a woman harassed the two men because they were holding hands. She called them "fags," told them they could not hold hands there, and asked them to leave. The woman then called the police. The police escorted the men out of the terminal, despite Valdez Coria's protesting they had done nothing wrong. Valdez Coria believed this was indicative of the police being unwilling to help.

In March 2018, Valdez Coria and his partner were leaving a movie theater when a vehicle containing four armed men wearing bulletproof vests stopped them, calling them "young ladies." One of the four men said, "well now you're f***ed because you just ran into the Michoacana Family," which is a criminal cartel. They physically forced Valdez Coria and his partner into the vehicle, compelled them to state their address, and then drove there. After entering the home, the four men searched the premises and found photos of the couple holding hands on a beach. Two of the attackers then raped Valdez Coria and his partner. When the attackers left, they stole documents

2

containing personal information. They threatened that if the two reported the incident, they would be physically harmed or killed.

Despite suffering injuries from the attack, Valdez Coria and his partner chose not to go to the hospital for fear that a report would be created. The two first stayed with a friend in Morelia for a couple weeks. Then, they fled to Tijuana. In Tijuana, they sought to report the attack. They spoke to several government agencies, both state and federal, but because the attack occurred in Morelia and not Tijuana, those agencies stated they could not assist them. Valdez Coria and his partner then spoke to a human-rights agency in Tijuana, where an attorney took their statements and offered to file a complaint. Once the men learned that the complaint could not be filed anonymously, though, they decided not to proceed.

Eventually, Valdez Coria and his partner disclosed the details of the events in Morelia to the person with whom they were staying in Tijuana. The host asked them to leave her home. The two men then went to the San Ysidro port of entry into the United States, beginning their encounter with this country's immigration laws. Valdez Coria's partner received asylum as a result of his individual proceedings. We are reviewing the denial of similar relief to Valdez Coria.

After applying for admission in May 2018, Valdez Coria underwent a credible-fear interview in early June. He was then served with a notice to appear charging that he was removable. At his first appearance before an IJ, Valdez Coria admitted the factual allegations in the notice to appear and sought asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). He submitted documents in support of his application, including country reports, news articles, and his own declaration.

The IJ conducted an evidentiary hearing in November 2018 in which Valdez Coria testified. The IJ determined that Valdez Coria was credible

when he described the deplorable events that led him to flee Morelia. The IJ concluded that the elements of past persecution had been shown except for the requirement that the Mexican government was unable or unwilling to help him. For that reason, the IJ then denied Valdez Coria's application.

Valdez Coria appealed to the Board of Immigration Appeals ("BIA"). The BIA agreed with the IJ that Valdez Coria failed to establish that the Mexican government was unable or unwilling to control the private actors who harmed him in the past or who may harm him in the future. Valdez Coria timely filed a petition for review with this court.

## DISCUSSION

This court reviews the final decision of the BIA. *Sealed Petitioner v. Sealed Respondent*, 829 F.3d 379, 383 (5th Cir. 2016). We will consider the IJ's decision only where it influenced the decision of the BIA. *Zhu v. Gonzales*, 493 F.3d 588, 593 (5th Cir. 2007). Review of the IJ's decision can occur even when the BIA did not expressly adopt the IJ's decision, provided that the BIA opinion cites the IJ's ruling favorably while adding very little reasoning of its own to affirm the IJ's decision. *Id.* at 594. Here, the BIA reiterated the IJ's reasoning throughout its opinion and provided little original analysis. Thus, we also review the IJ's opinion. *See id.* at 594.

The IJ's and the BIA's factual findings are reviewed for substantial evidence. *Id.* The substantial evidence standard requires that the decision (1) be based on the evidence presented and (2) be substantially reasonable. *Sharma v. Holder*, 729 F.3d 407, 411 (5th Cir. 2013) (citations omitted). Under the substantial evidence standard, this court may not reverse a factual finding unless the evidence "compels" such a reversal — *i.e.*, the evidence must be "so compelling that no reasonable factfinder could conclude against it." *Wang v. Holder*, 569 F.3d 531, 536–37 (5th Cir. 2009). It is the petitioner's burden to demonstrate that the evidence compels a contrary

conclusion. *Zhao v. Gonzales*, 404 F.3d 295, 306 (5th Cir. 2005). Legal questions are reviewed *de novo*. *Zhu*, 493 F.3d at 594.

Valdez Coria challenges both levels of the agency's legal analysis regarding past persecution. He alternatively argues that the record compels reversal. We separately address the issues.

## I.    *Legal errors*

We first identify the elements of a claim of persecution. Asylum may be granted by the Attorney General to refugees. 8 U.S.C. § 1158(b). A refugee is someone outside the "country of such person's nationality . . . and who is unable or unwilling to return to . . . that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The alien has the burden to prove a nexus between the persecution and one of those five reasons for persecution. *Sharma*, 729 F.3d at 412. In addition, the persecution must be by the government or by those whom the government of that country could not or would not control. *Gonzales-Veliz v. Barr*, 938 F.3d 219, 231 (5th Cir. 2019).

Once past persecution has been shown, there is a presumption that the alien has a well-founded fear of future persecution were the alien to return to his or her country. 8 C.F.R. § 208.13(b)(1). Regardless of whether past persecution was proven, though, the applicant may show that there is a reasonable fear of persecution in his or her "country of nationality" on account of one of the five reasons should the applicant return, that relocating to another part of that country would not avoid the persecution, and the fear makes the applicant unwilling or unable to return. *Id.* § 208.13(b)(2)(i)–(ii). The Government has the burden of rebutting the reasonableness of a fear of persecution by showing a "fundamental change" in country conditions such that

No. 19-60707

persecution could be avoided by the alien's "relocating to another part of the applicant's country." *Id.* § 208.13(b)(1)–(3).

The first of Valdez Coria's two arguments about past persecution is that the IJ found in his oral statement that Valdez Coria had been persecuted but then did not shift the burden to the Government to show if he could relocate within Mexico to avoid future persecution. The argument is based primarily on this statement by the IJ at the hearing: "The Court would find as a matter of law that the respondent suffered persecution. The rape and harassment in that incident certainly would constitute persecution. The Court would further find there was persecution on account of a particular social group, homosexual men."

The Government argues that the IJ's use of the word "persecution" only meant that the IJ found the level of harm inflicted on Valdez Coria was sufficiently severe to satisfy that element of the claim, but the IJ was not finding that all the elements of a claim of past persecution had been met. That characterization surely is accurate, as immediately following those sentences, the IJ stated that the issue remained of "whether or not [] the government of Mexico [was] unable or unwilling to help him, and that is where I think that this case fails."

We hold that the IJ accurately explained the multi-element test for showing past persecution. The IJ never concluded that all elements necessary to show past persecution were satisfied. Instead, the IJ explained that Valdez Coria satisfied most of the requirements for asylum but did not prove the Mexican government was unwilling or unable to protect him. As the IJ stated, the "case fails" due to that element of the claim. Imprecise use of the word "persecution" in the oral opinion still leaves the IJ's meaning clear.

Valdez Coria next posits that the BIA and IJ essentially committed the same legal error by combining consideration of whether the government was

unable or unwilling to help him with the internal-relocation analysis which applies to reasonable fear of future persecution. The argument is based on the flawed premise that the IJ held that all the elements of the persecution claim were proven.

Leaving the premise behind, we address the specific point that the BIA erred when it considered the national government as relevant for the unable-or-unwilling analysis. Valdez Coria argues that the relevant focus is the local government, *i.e.*, whether the government of Morelia, where Valdez Coria was harmed, could control the criminal cartel. His position is that no meaningful burden shifting occurs if he must prove that the national government is unable or unwilling to control his persecutors in order to receive the presumption of future persecution. "Put another way," Valdez Coria argues that "when an individual is seeking asylum on a claim of past persecution, . . . the BIA must assess the ability and willingness of the government *in the applicant's home jurisdiction* to protect the applicant, otherwise there is no meaningful burden to shift [for the internal-relocation analysis] *after* the finding of past persecution."[1]

The Government responds that the relevant regulation does not provide a geographical limitation. *See* 8 C.F.R. § 208.13(b)(1). The regulation provides that an applicant must show that he or she "is unable or unwilling to return to, or avail himself or herself of the protection of, *that country* owing to such persecution" as one of the elements of past persecution. *Id.* (emphasis added).

---

[1] Valdez Coria did not raise this argument to the IJ during the hearing. He presented it for the first time in his briefing to the BIA. The BIA did not identify this argument as waived, but it also did not explicitly reference it. Instead, the BIA commented that the human-rights agency in Tijuana's assistance "suggest[s] that the government is not unable or unwilling to protect him from persecution."

The IJ correctly concluded that Valdez Coria failed to show past per-secution. Further, he has not carried his burden for proving fear of future persecution of showing that he would be unable to relocate upon returning to his home country, his claim necessarily fails. *See Lopez-Gomez v. Ashcroft*, 263 F.3d 442, 446 (5th Cir. 2001); 8 C.F.R. § 208.13(b)(2)(iii).

Accordingly, no error occurred when the IJ and the BIA considered all of Mexico when evaluating whether the Mexican government was able or willing to protect Valdez Coria from his persecutors.

## II.     *Factual findings*

Valdez Coria also argues that various factual errors compel the grant-ing of relief.  He first argues the IJ's characterization of his attackers as "low level" and the IJ's explanation that the cartel's power did not extend to Ti-juana are not supported by substantial evidence.  Valdez Coria claims that these statements are unsupported because he was not running from the cartel simply because he was a homosexual man but because of the prior assault and threats for future harm after cartel members stole their victims' identification information.[2]  He explains that nothing in his testimony supports that his at-tackers were low-level cartel members.

The Government responds that regardless of whether Valdez Coria did not identify his attackers as cartel members, common-sense inferences may be drawn from the evidence. *See Rivera-Cruz v. INS*, 948 F.2d 962, 967 (5th Cir. 1991).  We do not decide whether this was a reasonable inference, though it is not obviously unreasonable.  Instead, we agree with the

---

[2] Valdez Coria also argues error in the BIA's failure to acknowledge that the cartel members stole his identity and threatened future harm if they "did not continue to be the cartel's 'sex slave[s].'"  He argues this failure created error by "disregard[ing] the exist-ence of an active threat on Valdez Coria's life."

Government's alternative proposition that the IJ and the BIA correctly relied on other record evidence to support their conclusions.

The controlling question is whether the BIA's finding that the Mexican government was able and willing to protect Valdez Coria is supported by substantial evidence. An agency decision will not be overturned if substantial evidence supports the decision. *Singh v. Barr*, 920 F.3d 255, 258–59 (5th Cir. 2019). The record must compel a different result, not just support an alternative conclusion. *Zhu*, 493 F.3d at 594.

Valdez Coria contends that evidence of the Mexican government's apathy towards homosexual persecution compels reversal. He argues that the IJ and BIA based their decisions on mostly irrelevant evidence, such as the presence of gay bars and pride parades, as well as the existence of hate-crime legislation. He contends that he presented evidence to counter the existence of gay bars, noting that they are often the target of violence and that the parades occurred infrequently due to violence. He also cites to Ninth Circuit caselaw to say that the existence of hate-crime legislation does not show an ability or willingness to control the cartel. *See Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1075 (9th Cir. 2017). The Government, on the other hand, relies on record evidence that supports the Mexican government's attempt to control gang crime.

In a recent unpublished opinion, a panel of this court dealt with a similar argument in the context of an individual from El Salvador who claimed that his government lacked the ability or the willingness to protect him. *See Perez-Tobar v. Garland*, 841 F. App'x 716, 717 (5th Cir. 2021). Both "the IJ and BIA [had] explained that the Salvadoran police accepted [the applicant's] report of an assault; they further explained that there is no evidence that the police refused or failed to investigate." *Id.* The BIA had also considered a country report identifying that the country had recently held a

signing ceremony for a policy to protect members of the applicant's social group. *Id.* Even though the applicant argued that other evidence in the record supported that gay individuals were mistreated, the court held that the evidence did not compel the opposite result. *Id.* We find that panel's explanation of substantial-evidence review to be persuasive. The instances Valdez Coria identify similarly do not compel reversal.

Of some relevance, neither Valdez Coria nor his partner made any official report of the kidnapping and rape. They approached no authorities within Morelia. When the human-rights agency in Tijuana offered to help them file a complaint, both men declined. Valdez Coria explains that such reports would have been futile based on other experiences, but the evidence is not compelling about futility. Valdez Coria describes two other events to support the claim of futility. First, the bus incident where the police were called and asked both him and his partner to leave the bus station after homophobic slurs were used. Second, he indicates that law enforcement's failure to respond to the neighbor's report of the 2014 attack while playing basketball similarly supports his position.

This court has considered such arguments before. A panel of this court held that the "subjective belief that it would have been futile to report the abuse to authorities, based on [the applicant's] testimony that the police can be bribed and because her partner had connections in the government, is not sufficient to compel a conclusion that the Honduran government was unable or unwilling to protect her." *Arevalo-Velasquez v. Whitaker*, 752 F. App'x 200, 202 (5th Cir. 2019). In that case, the applicant, like Valdez Coria, had traveled away from the location of the incident and talked about the incident with someone who could help. *Id.* at 201. The police sergeant outside of the city where the incident occurred encouraged the applicant to make a formal complaint or seek other legal protection, but neither occurred. *Id.* We agree with that analysis.

No. 19-60707

There is contrary evidence in the record about the benefits of filing a report of such treatment.  Valdez Coria was encouraged to file a complaint when he spoke to the human-rights agency in Tijuana, but he chose not to.[3] The BIA explained that Valdez Coria "has not shown that the failure of the police to respond to the neighbor's report of the attack . . . was tied in any way to their homosexuality, as opposed to a more  benign reason such as general ineffectiveness."  Finally, Valdez Coria testified that there was a human-rights attorney ready and willing to help the couple file a complaint against the attackers.  It was their choice not to pursue that opportunity.

The record does not compel reversal of the denial of relief based on the challenged fact-findings.   The petition for review is DENIED.

---

[3] We acknowledge that a report need not always have been filed to succeed in a claim for asylum.  *See, e.g.*, *Matter of S-A-*, I. & N. Dec. 1328, 1333 (BIA 2000); *Arevalo-Velasquez*, 752 F. App'x at 201–02.  Our point is only that the evidence does not compel a conclusion that the report would have been futile.