# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 1, 2023

Lyle W. Cayce
Clerk

No. 21-60120

Juana M. Ixcoy Herrera,

*Petitioner*,

*versus*

Merrick Garland, U.S. Attorney General,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
A209 983 153

Before Jones, Ho, and Wilson, *Circuit Judges*.
Per Curiam:*

Petitioner seeks review of a final order of removal by the Board of Immigration Appeals (BIA). She alleges that the BIA and Immigration Judge (IJ) improperly shifted the burden of proof onto her and that their conclusions were not supported by substantial evidence. We disagree and deny her petition for review.

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 21-60120

**I.**

Petitioner Juana M. Ixcoy Herrera is a native and citizen of Guatemala and member of the Quiche-Mayan ethnic/indigenous group. Members of this group have experienced prejudice and violence in that country.

A native of the municipality of Ixcán, Petitioner obtained a degree and a job as a secretary, subsequently enrolling in university seeking a legal education. During her employment and studies, Petitioner met and in 2012 married a Ladino man—a non-indigenous Guatemalan of European or mixed descent. Upon her marriage, Petitioner left her studies and moved in with her husband and his parents and two sisters. Petitioner's sisters-in-law displayed significant hostility toward Petitioner, directing their vitriol toward her on numerous fronts: her ethnicity, her inability to have children, her cooking, and their belief that their brother would be better matched with either of two other women with whom he had fathered children. In light of this conflict, Petitioner pressed her husband to find another living situation, and he responded by building them a home of their own a mere ten meters away from the family home. In 2015, Petitioner's husband left Guatemala for the United States.

In 2017, Petitioner was walking outside after work when she saw a man whom she recognized as a relative of her sister-in-law's friend. He was staring at Petitioner and speaking on the phone. As she began driving home, a masked man riding a motorcycle cornered her vehicle and shot at her repeatedly at close range, hitting her hand and multiple places within her car before she managed to speed away. Moments later, Petitioner saw her sister-in-law standing on the side of the road. Petitioner remains convinced that the attempted murder was commissioned by her sister-in-law.

Petitioner reported the incident to the police but did not tell them that she suspected her sister-in-law's involvement, an omission she attributes to

2

fear. The police accompanied Petitioner to the hospital, alerted the prosecutor's office, and conducted an investigation of the crime scene and an examination of the vehicle. With very little to inform their investigation, the police examined Petitioner's vehicle, but they do not appear to have investigated further and never followed-up or returned her calls.

Immediately following the incident, Petitioner fled to her parents' home located in a rural indigenous community approximately two hours away. She hid there for two months, quitting her job and rarely leaving the house. When she did venture outside, it was always in the company of her father or brother. Petitioner's sister-in-law knew where she was staying following the incident and telephoned Petitioner to offer her sympathy and inquire as to the status of the investigation.

One week after arriving at her parents' home, she received a phone call from an anonymous male caller. He told her "he was going to finish [her]" "when [she] least expect[ed] it" and demanded money. Petitioner hung up, removed the SIM card, and changed her phone number. She and her parents then traveled to the U.S. Embassy in Guatemala City to seek a U.S. visa for her to leave Guatemala. When her visa application was denied—and she was informed that she could not reapply for six months— the family traveled together by car and by foot to the Mexican border, and from there she traveled with her brother to the Texan border, where she requested asylum relief.

At the U.S. border, Petitioner was found to have a credible fear of persecution if she returned to Guatemala. In 2018, the IJ granted her asylum relief on the basis that she experienced past persecution due to her membership in the Quiche-Mayan ethnic/indigenous group. The BIA remanded the case for further consideration of whether the Guatemalan government would be unable or unwilling to protect Petitioner from future

persecution and whether it was unreasonable for her to relocate within Guatemala.

On remand, the IJ reiterated that Petitioner had indeed experienced past persecution due to her membership in a particular social group. But he held that she was ultimately ineligible for asylum relief because she could avoid future persecution by relocating internally. He did not reach the BIA's second question of whether the local government could protect her from future harm. The BIA adopted and affirmed the IJ's holding and dismissed Petitioner's appeal. Petitioner timely petitioned this court for review.

## II.

As a general matter, we "only have authority to review the BIA's decision, although we may also review the IJ's decision when it has some impact on the BIA's decision, as when the BIA has adopted all or part of the IJ's reasoning." *Enriquez-Gutierrez v. Holder*, 612 F.3d 400, 407 (5th Cir. 2010). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). *See also Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006) ("Under the substantial evidence standard, reversal is improper unless . . . . [t]he applicant . . . show[s] that the evidence is so compelling that no reasonable factfinder could reach a contrary conclusion.") (citation and quotations omitted). Whether the BIA and IJ properly applied the burden of proof is a question of law reviewed de novo. *Mikhael v. I.N.S.*, 115 F.3d 299, 305 (5th Cir. 1997).

To be granted asylum in the United States, "[t]he burden of proof is on the applicant to establish that the applicant is a refugee." 8 U.S.C. § 1158(b)(1)(B)(i). The definition of "refugee" includes "any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of

No. 21-60120

the protection of, that country because of persecution or a well-founded fear of persecution on account of . . . membership in a particular social group." 8 U.S.C. § 1101(a)(42). "An applicant who has been found to have established such past persecution shall also be presumed to have a well-founded fear of persecution." 8 C.F.R. § 1208.13(b)(1).

Nevertheless, "[t]hat presumption may be rebutted," and "an immigration judge, in the exercise of his or her discretion, shall deny the asylum application of an alien found to be a refugee on the basis of past persecution if [the IJ] f[inds] by a preponderance of the evidence" that "[t]he applicant could avoid future persecution by relocating to another part of the applicant's country of nationality . . . and under all the circumstances, it would be reasonable to expect the applicant to do so." *Id.* "In cases in which an applicant has demonstrated past persecution," the government "shall bear the burden of establishing by a preponderance of the evidence the requirements of" internal relocation. 8 C.F.R. § 1208.13(b)(1)(iii).

For purposes of determining the reasonableness of internal relocation, "adjudicators should consider the totality of the relevant circumstances regarding an applicant's prospects for relocation, including the size of the country of nationality or last habitual residence, the geographic locus of the alleged persecution, the size, numerosity, and reach of the alleged persecutor, and the applicant's demonstrated ability to relocate to the United States in order to apply for asylum." 8 C.F.R. § 1208.13(b)(3).

## III.

Petitioner challenges the decision on two grounds. First, she alleges that the BIA and IJ improperly placed the burden of proof on her, rather than on the government. Second, she asserts that their decision was not supported by substantial evidence. Neither is persuasive.

Petitioner claims that the IJ improperly placed the burden of proof on her, rather than the government, by pointing out how she was unable to demonstrate that internal relocation was not feasible. She cites decisions of our sister circuits holding that the burden of proof was improperly shifted by asking an asylum applicant to prove a negative. *See Juan Antonio v. Barr*, 959 F.3d 778, 796 (6th Cir. 2020); *Ortez-Cruz v. Barr*, 951 F.3d 190, 201 (4th Cir. 2020); *Qui Rong Chen v. U.S. Dep't of Just.*, 195 F. App'x 16, 18 (2nd Cir. 2006); *Mashiri v. Ashcroft*, 383 F.3d 1112, 1122 (9th Cir. 2004); *Bace v. Ashcroft*, 352 F.3d 1133, 1140 (7th Cir. 2003), *as modified on denial of reh'g* (Apr. 9, 2004).

But that's not what happened here. The IJ in this case specifically concluded that the government had "met its burden to show that internal relocation is reasonable for the respondent and has rebutted the presumption that internal relocation is not reasonable." And for good reason. The IJ found that, according to Petitioner's own testimony, (1) Petitioner moved just two hours away from where she was attacked; (2) Petitioner stayed there for sixty days without harm to her person; (3) during that time, the purported orchestrator of the attack knew where Petitioner was; and (4) Petitioner even continued to speak on the telephone with the purported orchestrator.

We have held before that the government can meet its burden by relying on an applicant's testimony alone. *See Singh v. Barr*, 920 F.3d 255, 260 (5th Cir. 2019) (establishing that "the argument that the [government] must affirmatively submit its own documentary evidence or summon its own witnesses is belied by the text of the regulation, which simply requires the [government] to rebut the presumption by the preponderance of *the* evidence, not by *its* evidence"). Moreover, the IJ here relied not only on Petitioner's own statements, but also on reports and other evidence submitted by the government.

No. 21-60120

In sum, the IJ considered "the totality of the relevant circumstances regarding [Petitioner's] prospects for relocation," as is required under 8 C.F.R § 1208.13(b)(3). Petitioner is wrong to suggest that the conclusions of the IJ and the BIA were not supported by substantial evidence such that "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

\* \* \*

For the foregoing reasons, we deny the petition for review.